Melba Isenhart, Plaintiff-Appellee, v. Levi Seibert, Defendant-Appellant.

Term No. 55–F–7.

Fourth District.

May 9, 1955.

Rehearing denied June 23, 1955.

Released for publication July 6, 1955.

Johnson & Johnson, and Lindauer, Lindauer, Pessin & Nieman, all of Belleville, for defendant-appellant.

John R. Sprague, and Alan J. Dixon, both of Belleville, for plaintiff-appellee.

MR. JUSTICE BARDENS delivered the opinion of the court.

Plaintiff, a 32-year-old woman, sued the defendant for injuries received when struck by defendant's truck as she walked across State Route 159 north of Belleville, Illinois, in the late afternoon of February 7, 1952. The circuit court of St. Clair county entered judgment for the plaintiff on the jury's verdict, denying defendant's motion for a directed verdict, for judgment notwithstanding the verdict and for a new trial. Defendant appeals from these rulings alleging that plaintiff was guilty of contributory negligence as a matter of law, that there was no evidence fairly supporting a finding that defendant was negligent, and that such findings of the jury were against the manifest weight of the evidence. In addition, it is charged that the court erred in certain rulings and that the verdict is excessive and resulted from prejudice of the jury.

The evidence reveals that (after finishing her work at a factory in Belleville) plaintiff boarded a bus which runs north on Route 159 to Collinsville directly past her house about four miles north of Belleville. The highway is a 20-foot wide concrete road divided into two lanes of traffic. The bus stopped to let plaintiff out in front of her home which was on the west side of the highway. There were no marked crosswalks. As plaintiff proceeded across the highway toward her home and the bus resumed its travel northward, the defendant, a farmer who was hauling a bull in his 1937 Ford pickup truck, was driving south on the west half of the

222

pavement. The evidence is wholly conflicting as to exactly where defendant's truck was in relation to plaintiff when she first came into view from behind the bus and as to all the other elements of negligence and contributory negligence in the conduct of plaintiff and defendant. But the result was that plaintiff was struck a glancing blow by the right front of defendant's truck as she reached the west edge of the pavement, causing injuries which required hospitalization and surgery and resulted in loss of earnings and some permanent injury. The jury returned a verdict in her favor for $17,500.

■ Defendant's principal contentions that as a matter of law plaintiff's conduct constituted contributory negligence and that no negligence of defendant was shown require an appraisal of the evidence to determine if there is any evidence taken as true which fairly tends to support the plaintiff's cause of action. Merlo v. Public Service Co. of Northern Illinois, 381 Ill. 300, 45 N.E.2d 665.

■ ■ There were five witnesses to the actual impact: the plaintiff, the defendant and his wife, who was a passenger in the pickup truck, a passenger on the bus, and a Mr. Helwig who was driving behind the defendant. The substance of plaintiff's version is that she proceeded west behind the rear of the bus, that she then looked north and saw defendant's truck about 300 feet away approaching at an estimated speed of 40 to 45 miles per hour; that she continued walking across the highway, all the time observing the truck, and got almost to the west edge when the truck hit her. From this testimony, it may be reasonably inferred that plaintiff determined that there was sufficient time to safely cross in front of the approaching truck, relying also on the fact that she was plainly visible to the driver of such truck. Was this conclusion and conduct on her part contributory negligence as a matter of law? We think not. We have examined all of the cited cases

223

concerning this issue and find that except in the most extreme cases, a pedestrian's contributory negligence is treated as a question of fact for the jury's determination. Trennert v. Coe, 4 Ill.App.2d 166. In Moran v. Gatz, 390 Ill. 478, 62 N.E.2d 443, the Supreme Court said:

"The rule seems to be quite universal that a pedestrian's failure to keep a constant lookout, or to look again after having determined that he can safely cross ahead of approaching traffic, is not contributory negligence as a matter of law but it is a question for a jury whether he was in the exercise of ordinary care for his own safety. (Cases cited)."

Here, taking plaintiff's testimony as true, there is evidence that she maintained a constant lookout, saw defendant's truck, and was virtually across the highway when hit. This cannot be said to represent a total lack of evidence of due care.

This same evidence taken as true bears strongly on the issue of whether there is any evidence fairly tending to support the finding as to defendant's negligence, for, from such version, the jury might reasonably infer a failure on defendant's part to keep a proper lookout ahead. It would reasonably appear from the physical facts as to point of impact that the least swerve by defendant to the east would have permitted him to avoid plaintiff. This inference is valid, of course, only when plaintiff's testimony as to the relative positions of the truck and bus is taken as true. It must be said, therefore, that there was some evidence of care on plaintiff's part and negligence on defendant's part which required that the issues be submitted to a jury.

To treat of defendant's argument that the jury's findings on these issues were contrary to the manifest weight of the evidence, we must elaborate on the material portions of the testimony presented.

The driver of the bus testified that after the plaintiff had alighted from the bus, he pulled back onto the highway and had gone about 100 feet when he glanced into his mirror and saw plaintiff rolling on the west shoulder of the road. He did not observe defendant's truck prior to the accident. He stopped his bus about 125 feet from where he had let plaintiff off the bus. A passenger on the bus testified that he was standing behind the driver as the plaintiff left the bus; that the bus then started up and had gone 10 or 15 feet when he noticed defendant's truck approaching, about 15 feet north of the bus; that as the truck passed he observed the defendant apparently standing on his brake, and looking into the mirror on the side of the bus he saw something rolling off the highway to the west; that the bus stopped about 125 feet north of where plaintiff alighted and the truck about 125 feet to 175 feet south of the same point; that the truck did not appear to be going over 30 to 35 miles per hour; that plaintiff was lying about 50 to 60 feet south of where she crossed the highway. Other witnesses for plaintiff, passengers on the bus, did not see the accident but corroborated other favorable testimony for plaintiff as to positions of the vehicles before and after the accident, and plaintiff after the impact.

Witnesses for the defendant were a garage owner who testified as to the good condition of the brakes on defendant's truck, a Mr. Helwig who was driving behind defendant and observed the accident, and the defendant and his wife. Mr. Helwig testified that he was following defendant's truck at a distance of about a block and a half and that both vehicles were going about 40 miles per hour; that he observed a bus parked off the slab about 100 feet to the south of him, at which time defendant's truck was also about 100 feet south and had slowed to perhaps 20 miles per hour; that at that moment he noticed something flying through the

air and he pulled off onto the shoulder and found plaintiff lying about 2 feet off the slab; that the truck came to a stop about 100 feet further south and the bus, after having started up, pulled off onto the shoulder about 125 feet north of the scene. The defendant and his wife testified that they observed the bus stopped on the highway but did not see anyone leaving the bus; that as they got alongside of the bus it was then moving slowly, having just started up again; that at that moment, plaintiff came running out from behind the bus with her head down and, without glancing in their direction, ran directly in front of the truck; that defendant was then traveling about 20 miles per hour and he immediately applied his brakes and sounded the horn; that he did not have time to swerve to the east or to stop, and therefore hit plaintiff as she reached a point about a foot from the west edge of the pavement; that he stopped within 5 feet and they got out, defendant's wife later moving the truck off the highway about 100 feet from the scene of the impact.

This is the substance of the evidence. It is apparent that the jury was confronted with wholly conflicting versions of the incident and had to make a choice as to which side to believe. When a judgment rests so clearly on a matter of credibility of the witnesses, the jury's verdict should not be disturbed. The defendant argues, however, that plaintiff's version flies in the face of physical facts based on mathematical calculations. Admittedly there were improbabilities inherent in plaintiff's version of the accident but these were matters to be argued to the jury. To find that this verdict was against the manifest weight of the evidence would necessitate this court believing testimony which the jury apparently disbelieved and would result in a mere substitution of our judgment for that of the jury. There is ample evidence that defendant was some distance from plaintiff when she came into

view from behind the bus and that she was almost off the slab when struck. We conclude that the verdict on the issues of negligence and contributory negligence is not against the manifest weight of the evidence.

■ Defendant further urges that a new trial should be ordered because the matter of insurance was injected by one of plaintiff's witnesses. On cross-examination by defendant's counsel in response to the question: "Now then, after this accident happened did you ever talk to anybody about this case?", the witness answered: "One lawyer from the insurance company came over there." The answer required, of course, was only a "yes" or "no" and therefore the insurance element was volunteered. Rarely, however, does a lay witness stop short of answering what he assumes to be the ultimate information sought, and here there is no basis for assuming that the statement was made as a deliberate attempt to prejudice the jury. In addition, the reference to insurance was general and did not inform the jury that the defendant was protected by insurance. Spies v. Sussman, 264 Ill. App. 528; Smallen v. Aronson, 253 Ill. App. 540. In this instance the lower court evidently felt that the statement did not prejudice the defendant and we find no abuse of discretion in such conclusion.

■ It is also contended by defendant that the court erred in permitting plaintiff's doctor to answer a hypothetical question based in part on elements not yet in evidence. The court ruled that the doctor's testimony was admissible at that stage of the trial but would be stricken if the missing elements were not later put in evidence. The defendant argues that such evidence was not supplied and that the testimony should have been stricken. However, there was no subsequent motion by defendant to strike such evidence from the record and therefore the defendant cannot now complain of such ruling. Spenler v. Turley, 158 Ill. App. 146; Schmitt v. Kurrus, 234 Ill. 578. In addi-

227

tion, defendant's objection was general and did not point out what he contended were the missing elements. Riverton Coal Co. v. Shepherd, 207 Ill. 395, 69 N. E. 921.

█ Finally, defendant urges that the verdict is excessive and the result of passion and prejudice of the jury. The evidence indicates that plaintiff was unconscious for 5 days, was hospitalized for 35 days, underwent surgery on her leg on two occasions, suffered injury to the chest area which impairs her breathing and gives recurrent pain, and at the time of trial more than 2 years after the accident, she suffered some pain and disability of the leg. The medical expenses totalled $1,580 and wages lost about $3,200. With this portion of her damages aggregating almost $4,800, it does not appear that the allowance of the additional $12,700 for pain, discomfort, loss of earnings and some permanent injury is so excessive as to require a new trial or a remittitur.

There are several other errors presented with respect to rulings of the court but we do not feel that they are of such significance as to require a new trial.

For reasons stated, the judgment appealed from is affirmed.

Affirmed.

CULBERTSON, P. J. and SCHEINEMAN, J., concur.