Mary Alice Owen, Administrator of the Estate of Decius Owen, Deceased, Plaintiff-Appellee, v. Willett Truck Leasing Corporation, Defendant-Appellant.

Gen. No. 50,024.

First District, First Division.

July 30, 1965.

Rehearing denied August 16, 1965.

Herbert L. Caplan, of Chicago (Herbert L. Caplan and Richard J. Aronson, of counsel), for appellant.

Philip E. Ryan, of Chicago (Thomas P. Foley, James F. Flanagan, and Mary M. Shaw, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

An action to recover damages for wrongful death was brought by Mary Alice Owen, administratrix for the estate of her husband, Decius Owen, occasioned

by the alleged negligence of defendant, Willett Truck Leasing Corporation, in leasing a defective truck. From a judgment entered on a jury verdict for plaintiff, defendant has taken this appeal. No questions are raised on the pleadings or the damages.

Defendant's theory is that the trial court erred in failing to grant either a mistrial or new trial in view of the numerous prejudicial errors committed during the course of trial by plaintiff's counsel, the cumulative effect of which was to deprive defendant of a fair and impartial trial. Defendant further contends that the trial court should have directed a verdict for it, or in the alternative, ordered a new trial, on the basis that plaintiff failed to adduce any evidence sustaining her cause of action.

Plaintiff maintains that the verdict is consistent with the manifest weight of the evidence, that no prejudicial error was committed and, accordingly, that the judgment should be affirmed.

Decius Owen died on September 26, 1955 when he was found pinned against a loading dock behind his unattended truck, about 11 a. m., at the Ken Warehouse and Cartage Company, located at Roosevelt Road and Sioux Line R.R. tracks. On the morning of September 26 Webb-Lynn leased for the day from defendant a 1955 Chevrolet truck weighing about 7,800 pounds. Webb-Lynn dispatched the decedent in this truck to the Ken Warehouse to pick up a load of paper skids weighing about 5,000 to 6,000 pounds. Decedent had completed loading the truck. There were no eye witnesses to the occurrence.

Plaintiff called as her witness one James Fotopoulis who, on the day in question, was a dispatcher in the office of Ken Warehouse. He testified that he heard a scream, ran out to the dock and saw decedent pinned between the rear of the truck and the dock. The truck was on a slight grade adjoining the loading

dock with the engine running. He entered the cab, depressed the clutch with his left foot, put the truck in gear and drove it forward several feet. He then parked the truck on level ground, turned off the engine, engaged the hand brake and put the truck in gear. He saw the decedent lying on the ground and called for help. When asked on direct examination what the condition of the hand brake was as he moved the truck forward, he answered that he did not recall. Plaintiff's counsel then was allowed by the court to show to the witness a signed statement he had given to the police in October. After reading the statement he said that he did recall events of the occurrence. Asked then whether he recalled what he did with the emergency brake, he answered: "Must have removed it."

Officer James Forrestal of the Chicago Police Department Accident Prevention Bureau, called by plaintiff, testified that he arrived at the scene with officer McMahon and proceeded to take photographs, to conduct tests of the truck's hand brake and to complete his official accident report. He noticed nothing unusual about the hand brake and determined from his operation of the truck and the tests he performed that the hand brake functioned perfectly. A fire department ambulance and emergency crew then arrived and decedent was removed to St. Luke's Hospital.

Louis Bilinski, the safety director of defendant, and his assistant, Alvin H. Haase, after notification of the accident, came to the scene to investigate. In the presence of fire department captain Andrew J. Schubert, they examined the truck and tested the hand brake on a steep grade. Haase drove the truck to a nearby ramp and parked it facing upward. The engine was turned off and left in neutral gear, and the hand brake was engaged. Schubert entered the truck to observe the hand brake while the others shook the vehicle. The truck remained on the ramp

for 10 to 15 minutes and then was parked facing the opposite direction for the same test. Nothing unusual was noticed as to the functioning of the hand brake by Schubert or Haase.

The truck and hand brake were also examined and tested by Richard Tucker, service manager of Chevrolet Division, who found nothing defective or unusual. He determined that the hand brake was in good working order. Following these tests the truck was driven to the Webb-Lynn plant by an unknown person and later that afternoon returned empty to the scene of the occurrence.

James B. Swift, auditor and safety director for Webb-Lynn, came to the scene later with a Mr. Carvin from the Illinois Institute of Technology on behalf of Lumberman's Mutual, the insurance carrier of Webb-Lynn. Lumberman's is now claiming a lien for their workmen's compensation payments. The police, fire department and other witnesses had all departed prior to Swift's arrival. Swift observed Carvin inspecting the truck. It was again parked on a ramp and the hand brake set. He was in the cab and noted that Carvin set the emergency brake and "it slipped off."

There being no eye witnesses to the occurrence, plaintiff's case was dependent upon circumstantial evidence that sought to prove decedent had engaged the hand brake, and that such hand brake was defective and released itself. To sustain her cause of action, therefore, plaintiff was required to show by such circumstantial evidence that the deceased properly engaged the hand brake, that the hand brake was defective at the time here involved, and actually released itself, and that such defect was the proximate cause of the injuries from which plaintiff's decedent lost his life.

■ Defendant contends that prejudicial errors were committed which deprived it of a fair trial. We have repeatedly held that where the liability is sufficiently close, so that the jury might reasonably have returned a verdict for either party, the trial must be conducted in an orderly manner so that the jury will not be improperly influenced. Jacobson v. National Dairy Products Corp., 32 Ill App2d 37, 176 NE2d 551 (1961); Mattice v. Klawans, 312 Ill 299, 143 NE 866 (1924); Paliokaitis v. Checker Taxi Co., 324 Ill App 21, 57 NE2d 216 (1944). The question posed, therefore, is whether the possibility of prejudice caused by conduct of plaintiff's counsel was so great as to entitle defendant to a new trial.

The errors alleged by defendant are that plaintiff's counsel (1) argued facts to the jury which were not in evidence; (2) offered exhibits known to be incompetent; (3) elicited testimony based on unproved exhibits; and (4) impeached and cross-examined his own witness. We shall deal with these allegations seriatim.

James Fotopoulis was the only person who was in a position to observe the disputed position of the hand brake immediately after the occurrence. He repeatedly stated on direct examination that he did not recall the position of the emergency or hand brake, and plaintiff's counsel attempted to suggest an answer that the hand brake was engaged when he entered the truck. At the close of plaintiff's evidence, when defendant presented its motion for a directed verdict, plaintiff's counsel stated to the court that "Mr. Fotopoulis testified when he got into the truck, he had to use his left foot to kick off the emergency or handbrake." This was not his testimony. Again, in closing argument, plaintiff's counsel stated to the jury that "we know from the evidence here that the truck was *not in neutral* and you know the problem

400

we had in producing that evidence. James Fotopoulis told you that when he heard the scream he went out; and he admitted that in order to move the vehicle, *he had to release the emergency brake, push it down, kick it with his left foot.*"

The record discloses, as we have already indicated, that Fotopoulis found it necessary to refresh his recollection from signed statements he had given to the police upon their investigation. He stated on direct that the engine was running, that the truck was in *neutral* and had to be put in gear, and that he used his *left foot to depress the clutch.*

In denying defendant's motion for directed verdict the trial court relied on the statement of plaintiff's counsel as to the substance of Fotopoulis' testimony with respect to the hand brake, though defendant made an unsuccessful effort to present the court reporter's transcript to the court. Defendant argues that if the court was misled by this "key proposition" the jury was similarly confused and prejudiced.

Further charge of misstatement of facts is made with respect to cross-examination of witness Alvin Haase, assistant to the safety director of defendant. Over objection, plaintiff's counsel, on cross-examination, was permitted to read a portion of plaintiff's exhibit 13 marked for identification which was not qualified nor was a proper foundation laid for its use. From the record in the case we infer it was a report from General Motors Company addressed to the witness. The portion referred to indicated that "the nut on the parking brake lever was loose, but would *not cause a failure unless completely lost or bolt out.* The emergency brake was inspected and found to be in proper operating condition and tried on the incline of the southwest driveway of the storage lot and found to operate satisfactorily." In closing argument plaintiff's counsel stated, with respect

to this report, "It shows GM examined the truck and found a loose nut which *would incline the bolt to slip and come out*" and "*the only thorough examination was made by our engineer from I.I.T. who found the brake had begun to slip from a set position. GM Institute found the same thing.*"

██ Questions involving the conduct of counsel and the character and scope of their arguments to the jury, or incidents which have transpired during the course of the trial, are left very largely to the discretion of the trial court which has an opportunity of hearing the remarks of counsel on both sides, and is therefore able to determine much better than we whether anything has been said, or if any incident has transpired which justifies the remarks in which counsel see fit to indulge. North Chicago St. Ry. Co. v. Cotton, 140 Ill 486, 502, 29 NE 899 (1892). But, the discretion of the trial court may be abused and reversible error committed where liability is a close question of fact, and the conduct and arguments of counsel or incidents transpired in the course of the proceedings which clearly deprived a litigant of a fair trial and improperly prejudiced the jury in its verdict. Mattice v. Klawans, 312 Ill 299, 143 NE 866; Vujovich v. Chicago Transit Authority, 6 Ill App2d 115, 126 NE2d 731 (1955).

██ Plaintiff, in the instant case, undertook to supply facts not based upon any competent evidence in the record and, as stated in Wellner v. New York Life Ins. Co., 331 Ill App 360, 365, 73 NE2d 156 (1947), "The defendant is entitled to a fair trial, free from prejudicial conduct of counsel, who in an argument undertakes to supply facts, or an inference favorable to the plaintiff not based upon any evidence in the record."

■ The condition of the hand brake was a crucial element in the case. Evidence was introduced that there was nothing unusual or defective about it. Haase, Tucker and fire department chief Schubert so testified. Plaintiff's witnesses, Fotopoulis and officer Forrestal, said they found a normal functioning hand brake immediately after the occurrence. James Swift, for the plaintiff, said the hand brake slipped and he identified the report of Carvin of the Illinois Institute of Technology who did not testify. Counsel for plaintiff offered to admit Carvin's report into evidence although it was hearsay and clearly inadmissible and the court had so ruled. In closing argument, counsel nevertheless told the jury that the exhibit was the only complete examination of the truck and that it disclosed a defect in the hand brake.

■ Defendant argues it was prejudicial error to knowingly offer an incompetent exhibit into evidence and to comment to the jury regarding its contents after the court had ruled it inadmissible. In so doing, plaintiff undertook to supply facts not based upon any evidence in the record. As held in Mattice v. Klawans, 312 Ill 299, 310, "this line of argument was improper because counsel had no right to testify in his argument to the jury."

We further agree with defendant that the conduct of plaintiff's counsel in offering to admit the knowingly incompetent document made it appear that defendant was responsible for keeping it from the jury, thus depriving them of evidence material and unfavorable to defendant. Paliokaitis v. Checker Taxi Co., 324 Ill App 21, 26.

■ It is the province and duty of the courts to see that every litigant has a fair trial. In the instant case, where the issue of liability was a close

403

question, we believe the incidents enumerated had a prejudicial effect on the jury which cannot be measured. We, therefore, hold that in the interest of justice the cause be retried.

The judgment of the circuit court is reversed and the cause remanded for a new trial.

Reversed and remanded.

BURMAN, P. J. and MURPHY, J., concur.