William Douglas, Plaintiff-Appellee, v. Kraft Food Company, a Corporation, and Hollis E. Wright, Defendants-Appellants.

Gen. No. 69–49.

Third District.

June 25, 1970.

R. J. Lannon, Jr., Herbolsheimer & Lannon, of La Salle, for appellants.

Watts C. Johnson, Johnson, Martin & Russell, of Princeton, for appellee.

ALLOY, J.

This is an appeal from a judgment of the Circuit Court of LaSalle County in the sum of $30,000 in favor of plaintiff William Douglas and against Kraft Food Company, a Corporation, and Hollis E. Wright, an employee of said corporation, individually, as a result of personal injuries sustained in an automobile collision.

Plaintiff William Douglas, who was a music teacher in the Princeton Grade School system, was driving his automobile south on the Princeton-Tiskilwa road, during the noon hour on March 11, 1965. Defendant Hollis E. Wright, a traveling representative of Kraft Food Company was driving north on the same road. Defendant Wright had planned to make a call on a Mr. Espel who lived on the west side of the road. The road made a gentle "S" curve in the area involved and the lane leading to Mr. Espel's house was at the south end of the curve. To turn into the left lane for access to the Espel home, it was necessary for defendant to make a left turn from his northbound lane.

Defendant said that he was familiar with the road since he had traveled it seven or eight times previously. He testified that he was traveling at 50 to 55 miles per hour and began to slow down about 200 yards from the Espel driveway. He had reached a speed of 10 to 12 miles per hour. He stated that he was looking ahead up the road until the time he was ready to make the turn. Defendant testified that about 15 to 20 feet south of the driveway he prepared to make his turn and at this point he looked up the road and did not see the plaintiff's automobile. Defendant stated that as his left front tire crossed the center line of the road, he saw plaintiff's automobile bearing down on him about 200 or 300 feet away. Defendant then determined that rather than go on and complete the turn, it was best to turn back into his own lane, which he attempted to do. The impact with plaintiff's car occurred in a matter of seconds after he had started to turn back into the right lane. He did not know how fast plaintiff was traveling, and as near as he could recall, plaintiff's automobile was on the northbound portion of the highway at the time of impact. Defendant detected no sway in plaintiff's car as it approached him and stated that he thought plaintiff's car veered to the

left when plaintiff braked it. Defendant contended he was in his own lane at the time. The debris left after the accident was in plaintiff's southbound lane of traffic.

When defendant was shown pictures of the highway, he stated that evidently he had vision down the highway for 1,100 feet north from the Espel driveway. He did not know why he failed to see plaintiff's automobile in this space. He also testified that following the collision his automobile was facing northeast with the back end of the car slightly over the center line.

Plaintiff testified that he was also familiar with the road and that about two miles south of Princeton he came upon the "S" curve. He noted defendant's car approaching him from the south, but that when it was about 150 feet from his automobile, defendant's car turned into his lane. Plaintiff immediately applied the brakes on his car and he saw defendant's car then attempt to turn to the right. The collision followed. Plaintiff stated that at the time of impact, his car was in his right southbound lane and most of defendant's car was also in this southbound lane. Following the collision, the left front portion of plaintiff's car came to rest slightly over the center line and his automobile was at an angle facing southeast. Plaintiff testified that defendant's automobile was in the southbound lane when he first applied his brakes and though there was a short period of time until the time of the collision, plaintiff was sure that his car never left his own southbound lane of traffic.

The sheriff of Bureau County, Mr. Levisay, who investigated the accident testified as to what he saw at the accident scene. He found both automobiles about six to eight feet apart in front of the Espel driveway. Plaintiff's automobile was facing southeast, with the left front about a foot to a foot and a half over the center line. Defendant's car was about one to one and a half feet over the center line. He stated that the debris was all on the

plaintiff's side of the road, although there could have been some pieces of chrome or glass over on the opposite lane. There were skid marks about 30 feet long leading to the rear of plaintiff's car and the skid marks were in the right lane going south (which would be plaintiff's proper lane). His examination disclosed that defendant's car was damaged over the left front wheel, while the impact to plaintiff's car was in the center of the front bumper.

Mr. Lyter, an investigator for defendant, testified as to a conversation he had with the sheriff in which he contended that the sheriff had made certain markings on a diagram of the accident scene drawn on the back of an envelope which was produced at the trial. Mr. Lyter stated that Mr. Levisay indicated in the diagram that the skid marks veered into the left or northbound lane of traffic. The conversation referred to took place several months after the accident, as Mr. Levisay was serving as treasurer of Bureau County at the time of such conversation. In response to such testimony, Mr. Levisay stated that he did not remember talking to Mr. Lyter about the accident but stated that he had filed a report of the accident with a diagram and would not have made another diagram.

A civil engineer, who made a topographical survey of the highway where the accident occurred, testified that at a point 300 feet south of the point of impact of the automobiles, an automobile approaching from the south would have a field of vision of 1,350 feet up the road ahead.

As a result of the accident, plaintiff had an injury to his right knee which bothers him only when he marches. There were lacerations and contusions of the chin, an acute cervical strain, fractured or chipped teeth, and acute contusions of the skull and knee cap. Plaintiff was in the hospital overnight and he was in bed at home several days. He was required to eat eggnog and baby

food for four to six weeks prior to the time when his teeth were fixed. Plaintiff taught the week following the accident as he was preparing students for the spring music contest which was the high point of the year for the music students. Plaintiff made no claim for lost time from school as a result of the accident. The main concern of plaintiff was an injury to his neck which still bothers him if he puts it in an unusual position or engages in any vigorous activity. Plaintiff is able to teach but has not been able to do private teaching since the accident. The private teaching grossed plaintiff around $250 a year in the years 1963, 1965, and 1966, and over $600 in 1964. Plaintiff's leisure activities, such as golf and swimming, were also curtailed after the accident. The treating physician for plaintiff saw him twelve times in 1966, together with some additional visits when they met at the hospital. Plaintiff was also treated by the same physician twelve times in 1967. Plaintiff wore a traction device with a pulley and weights in bed at night for three to four months and also wore a neck brace. The treating physician testified that plaintiff should have at least five physiotherapy treatments a month (at a cost of $30 per month) plus a monthly examination (at the cost of $5 per month), and medication (at a cost of $20 per month). All of this treatment the physician testified should continue for from three to ten years. Another examining physician testified as to the injuries and stated that they were permanent and that surgery might be a possible cure.

On appeal in this Court, defendant contends that certain questions and conduct of counsel and the court were erroneous and prejudicial, resulting in a grossly excessive verdict, and that the court erred in giving certain instructions over objection of defendant.

In connection with the contentions of defendant, defendant emphasizes the principle that where a question of liability is close and vigorously contested, conduct of

counsel and the rulings of the trial court should be closely scrutinized (La Salle Nat. Bank v. Wieboldt Stores, Inc., 60 Ill App2d 188, 208 NE2d 845; Owen v. Willett Truck Leasing Corp., 61 Ill App2d 395, 400, 209 NE2d 868). It is well to examine the facts in the instant case for the purpose of ascertaining whether the record discloses a truly close question with respect to liability as contended by defendants.

■ It is apparent from the reading of the abstract of testimony and the record that the cause of the accident was, as the jury apparently concluded, defendant's failure to observe plaintiff's automobile coming toward him from the north when defendant began his left turn into the lane in which plaintiff was traveling at the time. The testimony by plaintiff disclosed that he applied his brakes when he saw defendant pull into the southbound lane of traffic to make the left turn. The evidence supports plaintiff's theory that his automobile remained in the proper lane and struck defendant's automobile in such lane. The testimony of the sheriff who investigated the accident with respect to the skid marks behind plaintiff's car indicated that such marks were all in plaintiff's lane of traffic. Most of the debris from the accident was in plaintiff's lane of traffic. The physical location of the automobiles following the accident was consistent with the theory that the accident happened in plaintiff's lane of traffic. So far as the record is concerned, there is no substantial evidence of any fault on the part of plaintiff. He was traveling at a reasonable rate of speed for the road and traffic conditions. While there was some contradiction of the testimony of the sheriff, it cannot be stated that the record in this case indicates a situation where the evidence creates or poses a truly close question of liability.

With these observations in view, we should examine the comment made by attorney for plaintiff by which de-

fendant contends plaintiff's counsel implied that something significant was being withheld from the jury. Plaintiff's attorney was questioning his witness, Dr. Giffin. Dr. Giffin was asked about a report concerning the examination of plaintiff at the Carle Clinic in Champaign, Illinois. Defendant objected to such testimony as hearsay. When such objection was sustained, counsel for plaintiff made a statement before the jury to the effect, "All right, if you don't want it." Even though the record is sparse in regard to certain important points relied upon by defendant, we have concluded that the record is sufficient to show defendant's objections. We do not, however, believe that the comment would constitute reversible error.

■ In Jacobson v. National Dairy Products Corp., 32 Ill App2d 37, 176 NE2d 551, relied upon by defendant, an attorney had persisted in trying to get to the jury that the opposing attorney was trying to keep relevant evidence from the jury. Counsel had been plainly instructed not to go into certain proceedings, but he insisted on keeping this prohibition before the jury to accomplish, by inference, what he could not do directly. The simple comment made by plaintiff's attorney in the cause before us was not enough to make it clear to the jury that plaintiff's attorney had important information which he was prevented from giving to them as was true in the Jacobson case. While this Court would reverse in a clear case, because of improper conduct of counsel, we do not believe that this situation exists in the present case, nor did this involve a case where the attorney attempted to introduce knowingly inadmissible evidence (Paliokaitis v. Checker Taxi Co., 324 Ill App 21, 57 NE2d 216; Owen v. Willett Truck Leasing Corp., 61 Ill App2d 395, 209 NE2d 868). The evidence referred to might have been proper (Smith v. Broscheid, 46 Ill App2d 117, 196 NE2d 380). We also have noted, from the record, that defendant cross-

examined the witness Dr. Giffin with respect to the Carle Clinic report. We, therefore, find no reversible error in the statement with respect to the Carle Clinic report by attorney for plaintiff.

The next issue raised was whether the examination of the jury by plaintiff's attorney on voir dire examination would justify reversal. During the voir dire examination of the jury, plaintiff's attorney asked prospective jurors if they would hold it against the Kraft Food Company because Mr. Wright was an employee of the company. Defendant contends that the result of such questioning was to advise each juror that Kraft Food Company was a big company with sufficient funds to pay a sizable verdict. While the voir dire examination was not in the record, and the propriety of such examination in absence of a record thereof could normally not be questioned on appeal, we conclude that, basically, the comment was not necessarily prejudicial. Kraft Food Company was a defendant in the case, and undoubtedly the jury knew that Kraft Food Company was a large corporation. We find no reversible error in the voir dire examination referred to.

 Defendant has also contended that the jury was prejudiced when plaintiff's attorney asked the defendant, "Have you appeared in any other accidents?" Defendant contends that the record is in error and that actually the question was whether defendant had been "involved" in other accidents. Plaintiff contends that the question was asked of defendant because defendant had stated that the sheriff did not question him about the accident when, in fact, the sheriff had testified as to a lengthy conversation with defendant. Plaintiff argues that he was trying to show that defendant was familiar with the routine questioning surrounding an accident and that was why he asked defendant if he had "appeared in other accidents" (the implication being that defendant was not

necessarily one of the parties to the accidents). We note from the record that defendant's attorney did not object to the question. In absence of any such objection, the trial court had no chance to rule upon the question, and defendant could not assert such error on appeal except in unusual situations (Muscarello v. Peterson, 20 Ill2d 548, 170 NE2d 564; Belfield v. Coop, 8 Ill2d 293, 134 NE2d 249). This was obviously not the situation in the case before us, and in absence of an objection we do not believe it is appropriate to consider this question on appeal for the purpose of possible reversal.

■ A further error is assigned as a result of the giving of Instruction No. 14 by plaintiff. This Instruction stated:

"The Plaintiff claims he was injured and sustained damages while exercising ordinary care and that the Defendants were negligent in one or more of the following respects:

"Failed to drive said vehicle to the right when proceeding in the opposite direction of the Plaintiff contrary to law;

"Failed to keep a proper lookout for vehicles ahead of him;

"Failed to give the Plaintiff at least one-half of the main traveled portion of the roadway, contrary to law;

"Turned said vehicle from a direct course upon the highway when such movement could not be made with reasonable safety contrary to law;

"Turned left into a private road without yielding the right of way, contrary to law.

"The Plaintiff further claims that one or more of the foregoing was a proximate cause of his injuries.

187

"The Defendants deny that they were negligent in doing any of the things claimed by the Plaintiff, deny that any claimed act or omission on the part of the Defendants was a proximate cause of the claimed injuries, and deny that the Plaintiff was in the exercise of ordinary care.

"The Defendants further deny that Plaintiff was injured or sustained damages."

This form of instruction was IPI No. 20.01 and was given over defendant's objection. The basic objection of defendant is that the instruction is repetitious. In the IPI Volume (Illinois Pattern Instructions Civil § 20.01), it is suggested that an instruction summarizing allegations of the complaint and denials by a defendant should meet the standards of Signa v. Alluri, 351 Ill App 11, 113 NE 2d 475. In the Signa case, the court examined a lengthy and detailed instruction which purported to summarize the allegations of the complaint. The court reviewed the history of instructions dealing with the allegations of a complaint and noted that in Illinois it is not proper to send the complaint to the jury room nor is it permissible to embody the pleadings in an instruction and, in effect, accomplish the same thing. In that case, the court pointed out (at page 20) that this should be accomplished by a summary of the pleadings, succinctly stated without repetition and without undue emphasis. Although the plaintiff's Instruction No. 14 in the instant case was much shorter than the 800-word instruction in the Signa v. Alluri case, the repetition which was criticized in the Signa case was present. We do not believe, however, that we would be justified in reversing in the cause before us, on the basis of the giving of such instruction. We do feel it is timely to renew the warning which was given in the Signa v. Alluri case, that an instruction of the character involved in the cause before us could be so prejudicial in a close case as to require a reversal. Repetition

should be avoided and undue emphasis should likewise be avoided in such instructions. We do not believe, however, that we would be justified in reversing in this cause in view of the record (Sphatt v. Tulley, 38 Ill App2d 229, 186 NE2d 670).

■ Defendant also contends that it was error to give plaintiff's Instruction No. 15, which provided in part that the jury could consider "The value of earnings lost and the present cash value of the earnings reasonably certain to be lost in the future." There was testimony by plaintiff that he gave private music lessons before the accident but was not able to do so after the accident. As we have indicated in the statement of facts, gross receipts from music lessons ranged from $250 to $600 a year. The instruction, therefore, was proper since there was evidence upon which to base the instruction, even though the evidence did not disclose a substantial amount earned in this fashion (Chicago & W. I. R. Co. v. Bingenheimer, 116 Ill 226, 4 NE 840).

■ Defendant also contends that the verdict is so excessive as to require a new trial. While the medical expense was relatively small in this cause ($1,253.43), and the loss of time from work was minimal, the record shows a substantial amount of possible medical expense which could run as much as $60 a month for up to 10 years according to one witness. There was also evidence as to the loss of future earnings and the fact that plaintiff's recreational activities were somewhat curtailed. There was evidence of pain and suffering, loss of weight, and other factors. We would, therefore, not be justified in setting aside such verdict as excessive (Lau v. West Towns Bus Co., 16 Ill2d 442, 158 NE2d 63).

■ It is also contended that while no single alleged error asserted by defendant is sufficient to require a reversal, the combination of such errors requires reversal in this Court. Our fundamental inquiry must be directed to a determination as to whether there was a possibility of

prejudice resulting therefrom which was so great as to entitle defendant to a new trial. In the cause before us, on the basis of the jury determination, it could be concluded, reasonably, that liability was clearly established and that the finding of the jury was not against the manifest weight of the evidence. The remarks of plaintiff's attorney in his questioning of defendant were not what would be classified as flagrant violations of accepted courtroom conduct. While plaintiff's Instruction No. 14 is objectionable, in view of the record in this cause, even coupled with other alleged errors there would not be an appropriate basis for reversal. Also, the verdict, although substantial, was not shown to be the result of passion or prejudice.

The judgment of the Circuit Court of LaSalle County will, therefore, be affirmed.

Affirmed.

RYAN, P. J. and STOUDER, J., concur.