CHRIS   BOSEL,   Plaintiff-Appellee,   *v.*   MARRIOTT   CORPORATION,
Defendant-Appellant.

First District (2nd Division)   No. 76-1504

Opinion filed October 24, 1978.—Rehearing denied November 21, 1978.

650

French & Rogers, of Chicago (Richard G. French and Timothy G. Keating, of counsel), for appellant.

Collins & Amos and Arnold & Kadjan, both of Chicago (Alan O. Amos, of counsel), for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Defendant appeals from a judgment awarding plaintiff damages for injuries sustained when a truck owned by defendant and operated by an employee of defendant collided with a vehicle operated by plaintiff. The following issues are presented for review: (1) whether the trial court erred in allowing testimony concerning certain regulations at O'Hare Airport in absence of the introduction of such regulations into evidence; (2) whether the verdict was based entirely on incompetent evidence and therefore cannot be sustained as a matter of law; (3) whether the trial court erred in denying defendant's motion for directed verdict which was based on the alleged contributory negligence of plaintiff; and (4) whether the trial court erred in denying defendant's motion for new trial which was based on alleged misconduct of plaintiff's counsel.

We affirm.

On September 25, 1971, between 8:45 and 9:45 p.m., a collision

occurred on the grounds of O'Hare Airport between a truck driven by an employee of defendant, Marriott Corporation, and a service vehicle driven by plaintiff, Chris Bosel. Plaintiff brought this action to recover for injuries sustained, alleging that the driver of the truck was negligent and that plaintiff was not contributorily negligent. The following facts were adduced at trial:

Plaintiff was employed by Northwest Orient Airlines and operated a service vehicle, known as a tug, which is used for pulling equipment and baggage carts. A tug is approximately six feet long, 3½ feet wide and stands lower than a normal automobile. A tug has no hood, horn or seatbelt, and the operator sits in the middle over the rear wheels.

Sebastian Rodriguez, who is not a party to this action, was employed by defendant as a truck driver. The truck was a 2½-ton, over-the-road vehicle used to transport food from defendant's kitchen to aircraft at O'Hare Airport.

The collision occurred on the grounds of O'Hare Airport, in an area known as the open aircraft ramp, between concourses C and D. The distance between the concourses is 750 feet, and there is a painted line down the center of the ramp area, which is an aircraft taxi line. Aircraft would taxi down this line and then turn and park at either concourse building. Each concourse has a yellow line down the length of the concourse, marking the ends of the parked aircraft. There are lights on the concourse buildings, but the light toward the center area is greatly diminished. There is a service road which encircles the concourse buildings, and there is an entrance into the concourse area at each concourse building.

Sebastian Rodriguez testified that on September 25, 1971, he was driving a Marriott truck, making a delivery at gate C-2 on the C concourse. After entering the airport, he drove on the service road and then entered the concourse area at concourse D. He then drove down the middle of the ramp area, along the aircraft taxi line and turned left at gate C-2. Rodriguez testified that after making the delivery, he drove back to the taxi line and was driving west down the middle of the ramp area when the collision occurred. Rodriguez stated that he was travelling at about 10 or 12 miles per hour, that the truck lights were on, and that he did not see the tug before the front part of the truck came in contact with the right side of the tug. He stated that defendant gave him instructions as to how to drive at O'Hare Field, but stated that he did not know whether one of the regulations stated that catering trucks are not to cross the open aircraft ramp between the concourse buildings. Rodriguez stated that he always entered the concourse area at the D concourse.

Plaintiff testified that he was at gate D-8 and he was driving the tug to a storage area at the end of the C concourse. Plaintiff stated that he

approached the yellow line, marking the end of the D concourse, looked both ways and saw no vehicles coming down the line. He then continued forward across the yellow line toward the C concourse, and he was two-thirds of the way to the middle aircraft taxi line when the collision occurred. Plaintiff stated that the accident did not occur in the middle and that the truck was travelling in a southwest direction, diagonally across the open area toward the entrance to the service road at the D concourse. Plaintiff testified that tugs are permitted to cross the ramp area, that there is no rule or regulation prohibiting tugs from going across the area, but the catering trucks were not permitted to go across the ramp area or to go down the middle of the ramp along the taxi line. Plaintiff stated that he did not expect any vehicles to be travelling in the middle area past the yellow line. Plaintiff was travelling at 10 miles per hour, which was as fast as the tug could travel; he first saw the truck when it was 30 feet away and at that time he could not accelerate to get out of the way or get the truck's attention because the tug has no horn.

Tommy Immesote testified that in September 1971 he worked for defendant and drove a catering truck which serviced the airport. At the time of the trial, Immesote was employed as a transportation agent for Northwest Orient Airlines. Immesote testified that while working for defendant, he was instructed as to the rules and regulations for safety on airport premises. Immesote was instructed to remain on designated roadways and to never cross the open aircraft ramp between the concourses. Immesote stated that the yellow line marking the end of the parked aircraft was a designated roadway, and that the middle aircraft taxi line was not a designated roadway. He stated further that he worked at the C concourse and was required to enter off the service road at the C concourse, but that he would enter from the D concourse and cut across the ramp area to save time.

On September 25, 1971, Immesote was working with Eddie Reyes. They were at the end of the C concourse waiting to service an aircraft when the collision occurred. Immesote did not observe the accident. Reyes testified that he observed defendant's truck going down the middle of the ramp area and saw the tug flash into the truck lights just before the impact. Reyes stated that the tug had no lights on, and that the truck was going about 15 miles per hour. Reyes testified that he was never instructed not to cross the ramp area, that when driving to C concourse he always followed the same route, which was to enter the concourse area at the D concourse and then to cut across the ramp area to the C concourse. Reyes had been employed by defendant for 13 years, had worked at O'Hare Airport for eight years and at the time of trial was working for defendant in Puerto Rico.

Phillip Gussard testified that he had been employed by Northwest

Orient Airlines for 19 years as a service manager. He was familiar with the operations on the ramp between the C and D concourses and was responsible for service employees. Gussard stated that the yellow lines were not traffic lines but were property lines showing the space leased from the city of Chicago, and that catering trucks should not travel down the aircraft taxi line. He did not know whether it was customary for catering trucks to cross the ramp area. Gussard stated that the tug involved was called a B5 tug, and that the tug lights would operate even if the engine was not running. Plaintiff testified on direct and in rebuttal that the tug was an old model B5 whose lights would operate only if the engine was running.

Plaintiff testified that prior to the accident his physical condition was good. Upon impact, he was thrown from the tug and landed on the concrete. He had pains in his left shoulder, left side of his chest and in both hips. He spent two weeks in the hospital and was off work for six weeks. When he returned to work, he could not work at his previous position as a baggage handler but had to do less strenuous work due to pains in his shoulder and hips. Dr. Robert Busch testified that he examined plaintiff on two occasions, once in April 1973 and once immediately prior to trial. His examination revealed a loss of tissue in the right hip and impaired mobility of the hip and left arm and side. X rays showed a fracture of the rib and a separation of the left shoulder. Dr. Busch believed the condition to be permanent and to require continuous medical care. Plaintiff testified that at the time of the accident he had been making $4.98 an hour, was working a 40-hour week plus approximately four hours in overtime.

The jury returned a verdict for plaintiff in the amount of $30,000 and responded in the negative to a special interrogatory as to whether plaintiff was contributorily negligent. The court entered judgment for plaintiff. Defendant's motions for judgment notwithstanding the verdict and the special interrogatory and for a new trial were denied.

I

Defendant initially contends that the trial court erred in allowing testimony as to the regulations at O'Hare Airport in absence of the formal introduction of such regulations by plaintiff's counsel. Defendant also contends that such testimony was inadmissible as hearsay, opinion evidence, and in violation of the best evidence rule. Plaintiff contends that defendant waived these arguments for purposes of appeal because defendant did not object to the testimony on the grounds raised on appeal, did not file a motion to strike such testimony and did not raise these arguments in his post-trial motion.

■■ It is well established that the failure to make a proper and timely

objection to the admission of evidence alleged to be objectionable or to move to strike it out after its admission, giving specific reasons for the objection or motion to strike, generally constitutes a waiver of objections for purposes of appeal. (*County Board of School Trustees v. Batchelder* (1955), 7 Ill. 2d 178, 130 N.E.2d 175.) Likewise, a specific objection to evidence constitutes a waiver of all other points not specified. (*Town of Cicero v. Industrial Com.* (1949), 404 Ill. 487, 89 N.E.2d 354.) Several witnesses, namely Rodriguez, plaintiff, Immesote and Reyes, were questioned about the safety regulations at O'Hare Airport. The only objection made by defendant was in reference to the testimony of Rodriguez, and the basis for the objection was that the regulation did not apply to catering vehicles. No objection was ever made on the grounds of hearsay, opinion evidence or best evidence rule. No motion to strike the testimony was made, and this argument was not made in defendant's post-trial motion. Thus, defendant will not be permitted to raise these objections for the first time on appeal. Ill. Rev. Stat. 1975, ch. 110, par. 68.1; *Town of Cicero v. Industrial Com.*; *Isenhart v. Seibert* (4th Dist. 1955), 6 Ill. App. 2d 220, 127 N.E.2d 469.

■ Defendant made no objection at trial that the testimony was improper because the regulations were not introduced into evidence. A jury instruction tendered by plaintiff which stated that there was in force an ordinance of the city of Chicago regarding safety regulations at O'Hare Airport and which included a portion of the regulations in question was refused by the court on motion by defendant. In the post-trial motion, defendant did not raise the specific argument made here but did allege that failure to introduce the regulations into evidence constituted one of many instances of improper conduct on the part of plaintiff's counsel. Even if it can be said that the issue was preserved for purposes of appeal based on the post-trial motion, there was no error by the trial court. The admission of evidence is a matter largely within the discretion of the trial court, and its decision should not be reversed unless such discretion has been clearly abused. (*Needy v. Sparks* (1st Dist. 1977), 51 Ill. App. 3d 350, 365, 366 N.E.2d 327.) The cases cited by defendant, *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 273 N.E.2d 809, and *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204, hold that regulations and standards may be admitted into evidence as indicative of a standard of care. The cases do not hold, as defendant contends, that introduction of regulations is required. Thus, we find that the court did not abuse its discretion in allowing testimony as to the regulations even though the regulations were not formally introduced into evidence.

## II

Defendant contends that the verdict for plaintiff is contrary to law because it rests solely on incompetent evidence. Defendant makes the same contentions as in his first argument in reference to hearsay and opinion evidence and failure to introduce the regulations into evidence. These contentions have been previously discussed with the conclusion that no error was committed by the trial court. It will be noted that even if the testimony was hearsay or opinion evidence, since no objection was raised, the evidence is competent. (*Buckingham Corp. v. Ewing Liquors Co.* (1st Dist. 1973), 15 Ill. App. 3d 839, 843, 305 N.E.2d 278.) The testimony is to be given its natural probative effect and considered with all other evidence. (*Town of Cicero v. Industrial Com.*, at 495.) Thus defendant's argument that the verdict rests solely on incompetent evidence has no merit.

## III

Defendant next contends that the trial court erred in refusing to direct a verdict for defendant. Defendant argues that plaintiff was contributorily negligent as a matter of law and thus the court should have granted its motion for directed verdict.

■■■ A directed verdict should be entered "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) The question of contributory negligence is ordinarily a question of fact for the jury. (*Sterba v. First Federal Savings & Loan Association* (2d Dist. 1966), 77 Ill. App. 2d 380, 222 N.E.2d 547.) Contributory negligence becomes a question of law "only when the evidence is so clearly insufficient to establish due care that all reasonable minds would reach the conclusion that there was contributory negligence." (*Swenson v. City of Rockford* (1956), 9 Ill. 2d 122, 128, 136 N.E.2d 777.) Based on the record in the present case, it cannot be said that plaintiff was contributorily negligent as a matter of law. It could be inferred from the evidence that catering vehicles did drive on the ramp area and plaintiff's view was unobstructed, that plaintiff should have expected other vehicles to be on the ramp and that plaintiff did not keep a proper lookout. However, plaintiff testified that he looked both ways before proceeding beyond the yellow line at the D concourse, and that he did not expect any other vehicles to be in the middle area. There was other testimony that catering vehicles should not be located on the middle taxi line but were to drive down the yellow line to the end of the concourse. Thus, evidence was presented from which

one could conclude that plaintiff was not contributorily negligent. The evidence is not such that all reasonable minds would necessarily reach the same conclusion. Also, courts have held that even where plaintiffs were injured upon plainly visible hazards, the question of contributory negligence may properly be submitted to the jury. (*Armagast v. Medici Gallery & Coffee House, Inc.* (1st Dist. 1977), 47 Ill. App. 3d 892, 365 N.E.2d 446; *Sterba v. First Federal Savings & Loan Association; Trojan v. City of Blue Island* (1st Dist. 1956), 10 Ill. App. 2d 47, 134 N.E.2d 29.) When the evidence is examined in a light most favorable to plaintiff, it is not clear that a verdict for plaintiff could never stand. Thus it was not error for the trial court to deny defendant's motion for directed verdict.

## IV

Defendant next contends that plaintiff's counsel committed several acts of improper conduct, and that the trial court erred in denying defendant's motion for new trial.

■█ It is well established that the decision of the trial court on a motion for new trial will not be reversed on appeal unless it affirmatively appears from the record that the trial court abused its discretion. (*Ferenbach v. DeSyllas* (4th Dist. 1977), 45 Ill. App. 3d 599, 602-03, 359 N.E.2d 1214; *Zwikel v. W. F. Hall Printing Co.* (1st Dist. 1972), 7 Ill. App. 3d 853, 858, 289 N.E.2d 111.) The trial judge has an advantage over a reviewing court in that he or she has an opportunity to observe firsthand the conduct of the trial, the demeanor of the witnesses and counsel, the reaction of jurors to evidence and argument, and the effect upon jurors of incidents that occur during trial. (*Trippel v. Lott* (1st Dist. 1974), 19 Ill. App. 3d 936, 312 N.E.2d 369; *Zwikel v. W. F. Hall Printing Co.*) Improper argument or misconduct of counsel may constitute grounds for reversal but only where it is apparent that the complaining party has been prejudicially affected thereby. (*Martin v. Kralis Poultry Co.* (5th Dist. 1973), 12 Ill. App. 3d 453, 297 N.E.2d 610.) It is true that where liability is sufficiently close so that a jury might have reasonably returned a verdict for either party, the trial must be conducted in a reasonable manner so that the jury will not be improperly influenced. (*Branch v. Seiler* (1st Dist. 1977), 54 Ill. App. 3d 693, 370 N.E.2d 873; *Owen v. Willett Truck Leasing Corp.* (1st Dist. 1965), 61 Ill. App. 2d 395, 209 N.E.2d 868.) However, misconduct by counsel may be rendered harmless error by the trial court's corrective action. *Branch v. Seiler; Martin v. Karlis Poultry Co.*

Defendant alleges that there were several instances of improper conduct by plaintiff's counsel. However, many of the acts complained of do not constitute improper conduct but were instances in which defendant's counsel made an objection to questions asked in improper form. In each case the court sustained the objection, and the question was

rephrased in proper form. The record does not support defendant's contention that counsel for plaintiff deliberately asked improper questions in order to force his opponent to object.

Defendant next contends that plaintiff's counsel referred to facts not in evidence when he objected to a question regarding the type of tug plaintiff was driving. However, the record establishes that there was contradictory evidence as to the type of tug and the functioning of the tug's lights. Counsel for plaintiff was not referring to facts not in issue.

Defendant contends that plaintiff's counsel made improper, prejudicial remarks that defendant's counsel was making speeches and would be called as the next witness. The record shows that these comments followed a series of objections by defendant's counsel in which he claimed that his opponent was misstating the evidence in his questions to a witness. The court commented that the facts were not being misstated and said, "the Jury will decide." After further arguing between counsel, the court held a conference in chambers. Although the remarks by plaintiff's counsel were objectionable, defendant did not request the court to instruct the jury to disregard the comments, and the record shows that the remarks were prompted by the constant interruptions of counsel for defendant and by counsel's confusion over the prior testimony. The remarks were not so prejudicial as to require reversal.

■■ Defendant next contends that plaintiff's counsel made a direct personal attack on defendant's counsel with the following remarks during his examination of Dr. Busch:

> "I am going to wait now until counsel finishes flipping through the x-rays we don't have to hear them. I am going to stand right here and I am going to wait. As soon as counsel gets through flipping the x-rays, distracting the Court and the jury, the doctor and me, then I will begin again. I think that's fair. Are you all done?"

The court then told counsel to continue with his questions and stated, "there will be no more crackling sounds so go ahead with your question." Defendant did not object to counsel's remarks and did not request the court to instruct the jury to disregard the comments. The remarks were not so prejudicial as to deprive defendant of a fair trial. See *Department of Public Works & Buildings v. Diel* (5th Dist. 1967), 89 Ill. App. 2d 130, 232 N.E.2d 133.

Defendant next contends that plaintiff's counsel made references to markings on an exhibit, implying that defendant's counsel improperly marked the exhibit. In questioning Reyes as to where the collision occurred, counsel for plaintiff showed Reyes a map of the concourse area and referred to a line which he stated was drawn by defendant's counsel. Defendant's counsel interrupted stating that he did not make the marks. Plaintiff's counsel replied that it was his recollection that the marks were

made by counsel for defendant during the examination of another witness in order to point out the area of the accident. The record shows that all counsel for plaintiff was doing was using the marks already on the exhibit in order to point out the place of the collision. He was not implying that defendant's counsel had done anything improper or had tampered with the exhibit. The remarks were not so prejudicial as to affect the outcome of the trial.

■■ Finally, defendant contends that plaintiff's counsel made unfair comments on the fact that defendant's counsel discussed the jury instructions in his closing argument. In his rebuttal argument plaintiff's counsel stated:

"The best witness for the plaintiff in this case is actually the defendant's lawyer. Tell you why. First of all, all of the reading of the instructions—the instructions, after all, contained here, the Judge has an equal set. They are not written or prepared or read for one side or the other. They are prepared by both counsel, submitted to the Court and you will hear them read. And, they are not read for this side or that side. And, Counsel's arguments should not make them sound that way. They are the inflection of the voice of counsel and not the Judge. You will hear a monotone statement down the line."

Defendant did not object to counsel's comments, did not request the court to instruct the jury to disregard the comments and did not specify the comments in his post-trial motion as constituting improper conduct as required by section 68.1 of the Civil Practice Act. (Ill. Rev. Stat. 1975, ch. 110, par. 68.1.) The comments are not so prejudicial as to require reversal even though no objection was made.

We have reviewed the record as a whole and conclude that the trial court did not abuse its discretion in denying defendant's motion for new trial. Although some of counsel's comments may have been objectionable and unnecessary, it does not appear that the jury was misled by any of the remarks. None of the remarks, considered separately or for their cumulative effect and in the context of a five-day trial, so prejudiced defendant that defendant could not receive a fair trial.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS, P. J., and DOWNING, J., concur.