SHARON TAYLOR *et al.*, Plaintiffs-Appellants, v. VILLAGE COMMONS
PLAZA, INC., d/b/a Capricorn/Gemini Lounge and Economy Liquors and
Food Mart, Defendant-Appellee.

Second District No. 2—87—0213

Opinion filed December 30, 1987.

Lindner, Speers & Reuland, P.C., of Aurora (Jon Yambert, of counsel), for appellants.

Ford, Marsch, Rampson & Wilhelm, of Wheaton (John H. Wilhelm, of counsel), for appellees.

JUSTICE INGLIS delivered the opinion of the court:

This is an action under the Dramshop Act (Ill. Rev. Stat. 1985, ch. 43, par. 135) arising out of personal injuries incurred by Sharon Taylor on July 18, 1984. The jury verdict was for defendant and against plaintiffs. We affirm.

Sharon Taylor was injured on July 18, 1984, when she was struck in the head by a brick which was thrown by John Washington. As a result of being hit, she sustained a permanent injury to her left eye.

The primary issue at trial was whether John Washington had purchased liquor from Economy Liquors and Food Mart (Economy Liquors), a store which was operated by defendant, Village Commons Plaza, Inc.

Washington testified that in the beginning of the evening of July 17, 1984, an older gentleman was going into Economy Liquors, and Washington asked if he would purchase liquor for Washington. The older gentleman brought a half-pint of gin out to Washington. That was at about 9:30 p.m. At the time Washington received the bottle of gin it was unopened and it took about 35 to 40 minutes to drink. He stated that he was not intoxicated after he drank the bottle of gin.

Washington further stated that he then went into Economy Liquors and purchased a 40-ounce bottle of Old English Malt Liquor. He then went outside and drank that bottle at the side of the building. That took him approximately 20 to 25 minutes to drink. After finishing this bottle of Malt Liquor, he mingled with some friends and then went back into the liquor store and purchased another 40-ounce bottle of Old English Malt Liquor. After finishing this second bottle of Malt Liquor, he felt intoxicated. Washington further stated that when he gets intoxicated he gets violent.

Washington further testified that he had been barred twice from defendant's premises by Alice Midgette. Despite this, however, he would still be able to buy liquor at defendant's premises if Midgette was not in the store. After leaving the liquor store, he went to see his girlfriend, who lives above plaintiffs. It was there that he threw

the brick that hit Sharon Taylor.

On cross-examination, Washington stated that he had previously been convicted of burglary and retail theft.

Alice Midgette, the manager of Economy Liquors, testified that nobody other than she and Mark Snoddy was working on July 17, 1984. She testified that part of her duties as manager is to keep out people who have been barred. She stated that Washington had been barred three times. In May 1984, she had Washington arrested. After he was arrested, she would see Washington on the property. Alice Midgette did not see Washington inside the premises on either July 17 or July 18, 1984. Midgette worked from 4 p.m. on the 17th to 1 a.m. on the 18th. She testified that she is also the manager of the lounge and is not always in the liquor store.

Mark Snoddy testified that he believed that he was working on July 17, 1984. He stated that he knew Washington and that he did not sell alcoholic beverages to Washington on July 17, 1984. He further stated that he knew this because Washington had been barred from the premises.

At the close of trial, the jury returned a verdict in favor of defendant and against plaintiffs. The trial court denied plaintiffs' post-trial motions, and plaintiffs timely appealed.

Plaintiffs contend that the defense was based on an improper presumption and that, accordingly, the jury verdict was against the manifest weight of the evidence. Plaintiffs argue that the defense theory was that Washington did not purchase alcohol from defendant. Plaintiffs further argue that the only evidence that defendant did not sell alcohol to Washington was the fact that Washington had been barred from defendant's premises. Plaintiffs argue that a showing that Washington had been barred from defendant's premises raised an improper presumption that defendant had not sold liquor to Washington. We disagree.

To recover under the Dramshop Act (Ill. Rev. Stat. 1985, ch. 43, par. 135) plaintiffs had the burden of proving among other things that defendant either sold or gave alcohol to Washington. See *Reed v. Fleming* (1985), 132 Ill. App. 3d 722, 725.

As to this element, the testimony was conflicting. Washington testified that he purchased two bottles of malt liquor from Economy Liquors. In opposition to this testimony, Alice Midgette testified that nobody other than she and Mark Snoddy was working on July 17, 1984, and that she did not even see Washington on that date. And, Snoddy testified that he did not sell Washington any alcohol.

■ Where there is testimony in conflict, it is up to the jury to

determine which testimony is correct and such a decision will not be set aside unless such decision is palpably erroneous. (*Russo v. Checker Taxi Co.* (1978), 67 Ill. App. 3d 379, 381.) In the present case, there was conflicting testimony, and the jury found that of Washington to not be credible. Thus, it cannot be said that the verdict was against the manifest weight of the evidence.

Plaintiffs next contend that the trial court improperly instructed the jury on the credibility of Washington's testimony. In making this objection, plaintiffs begin by attacking the admission into evidence of Washington's criminal history, something they did not object to at trial. Plaintiffs then go on to attack the instruction claiming that it "unfairly emphasized a prior criminal conviction of John Washington when such a conviction would have no bearing on the honesty of his testimony." In response, defendant contends that plaintiffs waived this issue and in the alternative that the trial court's instruction was not improper.

From a review of the record, it appears that plaintiffs have waived any objection to introduction of the evidence itself but have preserved an objection to the instruction. Yet, a proper analysis of the instruction must begin with an examination of the propriety of the evidence itself.

Our supreme court has adopted Rule 609 of the Federal Rules of Evidence for both criminal (*People v. Montgomery* (1971), 47 Ill. 2d 510, 519), and civil cases (*Knowles v. Panopoulos* (1977), 66 Ill. 2d 585, 587). Under such rule, evidence of prior crimes may be admitted to impeach a witness if the prior crime was punishable by imprisonment in excess of one year or was a crime which involved dishonesty. (66 Ill. 2d at 588.) Our supreme court has further held that theft is a crime of dishonesty which may be used for impeachment purposes. (*People v. Spates* (1979), 77 Ill. 2d 193, 203-04.) Once the proponent of the impeachment has shown that the crime was either punishable by imprisonment in excess of a year or involved dishonesty, the burden is upon the party opposing the impeachment to show that the evidence is more prejudicial than probative. *People v. Medreno* (1981), 99 Ill. App. 3d 449, 451.

In the present case, Washington testified that he pleaded guilty to aggravated battery arising from the same incident in which Sharon Taylor was injured and, on cross-examination, stated that he had been convicted of burglary in 1984 and also had a conviction for misdemeanor retail, theft. Although plaintiffs argue that there is no showing that Washington's convictions relate to testimonial deceit, our supreme court has found that a conviction for theft "reflects ad-

versely on one's honesty and therefore relates to one's ability to be truthful under oath." (*Spates*, 77 Ill. 2d at 204.) The burglary and aggravated battery convictions were likewise admissible for impeachment as they were punishable by imprisonment in excess of one year. (See Ill. Rev. Stat. 1983, ch. 38, pars. 12—2, 19—1.) Thus, the introduction of Washington's prior criminal record was proper.

■ Likewise, the instruction was proper as it followed IPI No. 3.02 (Illinois Pattern Jury Instructions, Civil, No. 3.02 (2d ed. 1971)) and was a correct statement of the law. (See *Knowles*, 66 Ill. 2d at 588.) Consequently, we find that the trial court did not err in instructing the jury.

■ Plaintiffs next contend that the trial court improperly instructed the jury regarding the sale of alcohol to Washington. Plaintiffs argue that defendant's instruction No. 8 was non-IPI and a misstatement of the law, and thus should not have been given. We disagree.

Supreme Court Rule 239(a) (107 Ill. 2d R. 239(a)) requires the use of IPI instructions unless the trial court determines that they are an inaccurate statement of the law. It is only when the IPI does not contain a proper instruction on the subject that another instruction on the subject may be given. (*Fravel v. Morenz* (1986), 151 Ill. App. 3d 42, 45.) In the present case, the instruction defined "sold or gave intoxicating liquor" as follows:

> "When I use the words 'sold or gave intoxicating liquor,' I mean that the sale or gift must have been directly to John Washington, and not to another person who later gave the intoxicating liquor to John Washington."

There is no IPI instruction which defines the term "sold or gave intoxicating liquor." Consequently, Rule 239(a) is not a bar to the instruction given.

■ However, plaintiffs also contend that this instruction misled the jury into believing that in order to find liability it was required to find that all the liquor consumed by Washington must have been sold directly to him. On its face, the instruction complained of does not lead to the confusion alleged by plaintiffs. But, even assuming it created such confusion, the proper approach for determining whether an instruction constitutes reversible error is to determine whether the instructions taken as a whole were sufficiently clear so that the jury was not misled. (*Willson v. Pepich* (1983), 119 Ill. App. 3d 552, 558.) In the present case, special interrogatory No. 1, to which the jury answered no, asked, "Did defendant directly sell or give intoxicating liquors to John Washington?" This interrogatory appears to

ask whether defendant sold any liquor to Washington. Thus, even if defendant's No. 8 could be misconstrued, the giving of such instruction was not prejudicial given the fact that the jury found that defendant did not directly sell any alcohol to Washington.

▮ Finally, plaintiffs correctly point out that the instruction did not faithfully state the law as regards the sale or gift of intoxicating liquor. In addition to liability being imposed for the direct sale or gift of liquor to the intoxicated person, liability may be imposed if defendant should have known that the intoxicated person was to have been the consumer of the intoxicant. (*Welch v. Convenient Food Mart No. 550* (1982), 106 Ill. App. 3d 131, 133.) This rule does, however, require more than knowing merely that unspecified, absent persons will be drinking; the defendant must have actual or constructive knowledge that a particular person will be drinking. (106 Ill. App. 3d at 133.) While an instruction that fully stated the law in regards to the "sale or gift of intoxicating liquor" would have included language directing the jury to find liability if it found that defendant should have known that Washington would be the consumer of liquor sold or given out by defendant, it does not appear that the failure to include such language constitutes reversible error. It was plaintiffs' theory that Washington purchased alcohol directly from defendant. This, the jury found, was not the case. Additionally, from a review of the record, it appears that there was no evidence that defendant should have known that alcohol sold by defendant would be consumed by Washington. While Washington testified that he had one bottle of gin purchased for him by an older man, there was no evidence that would lead to a conclusion that defendant knew that the gin sold to the older man would be consumed by Washington. Consequently, we find that the giving of defendant's instruction No. 8 was not reversible error.

▮ Plaintiffs' final contention is that the trial court committed plain error when it admitted evidence that Washington had been barred from defendant's premises. Plaintiffs argue that such evidence was irrelevant and immaterial, and that it led to an improper presumption that defendant had not sold alcohol to Washington. We disagree.

At trial, plaintiffs did not object to the admission of evidence of which they now complain. Therefore, such objection would normally be considered waived. (*People v. Carlson* (1980), 79 Ill. 2d 564, 576.) Plaintiffs, however, urge this court to find that the admission of such evidence was plain error. In support of such position plaintiffs cite *Muscarello v. Peterson* (1960), 20 Ill. 2d 548.

Ordinarily the doctrine of plain error is limited to criminal cases. (See *People v. Mucha* (1986), 140 Ill. App. 3d 788, 796.) However, in *Muscarello*, our supreme court found that waiver did not apply where a minor's interest was at issue and the party opposing the minor's interest had partaken in affirmative misconduct when it deleted part of a letter that it sent to the plaintiff's lawyer in response to discovery. (*Muscarello*, 20 Ill. 2d at 555.) The court stated:

"If a litigant or his representative engages in conduct so prejudicial and reprehensible that the other party cannot receive a fair trial and the judicial process stand without deterioration, this court will review and consider assignments of error even though no objection was made and no ruling made or preserved in the trial court." 20 Ill. 2d at 555.

The present case is distinguishable because it neither involves the interest of a minor nor the affirmative misconduct of an opposing party. Therefore, the doctrine of plain error is inapplicable. See *Douglas v. Kraft Food Co.* (1970), 125 Ill. App. 2d 178, 187.

██ Moreover, the admission of evidence showing that Washington had been barred from defendant's premises was not error. It was relevant in showing that both Midgette and Snoddy knew who Washington was, and it would tend to show a bias against defendant's establishment on the part of Washington.

Consequently, we find that the doctrine of plain error is inapplicable to this case and that in any event error was not committed.

In accordance with the foregoing analysis, we affirm the decision of the trial court.

Affirmed.

LINDBERG, P.J., and UNVERZAGT, J., concur.