DARIN KRAWCZYK, Special Adm'r of the Estate of Jean M. Krawczyk, Deceased, Plaintiff-Appellant, v. STANLEY F. POLINSKI et al., Defendants-Appellees.

Second District    No. 2—93—0862

Opinion filed November 1, 1994.

Michael P. Schostok and Patrick A. Salvi, both of Law Offices of Patrick A. Salvi, of Waukegan, for appellant.

Edward R. Tomkowiak and Scott G. Ridge, both of Donald Ridge & Associates, of Waukegan, for appellees.

JUSTICE PECCARELLI delivered the opinion of the court:

Plaintiff, Darin Krawczyk, special administrator of the estate of Jean Krawczyk (decedent), appeals the order of the circuit court of Lake County denying his post-trial motions.

On November 23, 1991, decedent was killed when a motor vehicle driven by Stanley Polinski (Polinski) struck decedent's automobile. Plaintiff brought a wrongful death action alleging that Polinski engaged in both negligent and wilful and wanton conduct. Additionally, pursuant to the Liquor Control Act of 1934 (Dramshop Act) (Ill. Rev. Stat. 1991, ch. 43, par. 135 (now 235 ILCS 5/6—21 (West 1992))), plaintiff brought a statutory action against American Drug Stores, Inc., d/b/a Osco Drug Stores, Inc. (defendant). Defendant had sold Polinski alcohol on November 22, 1991. The jury found for Polinski on the wilful and wanton conduct counts; the trial court directed a

verdict for plaintiff on the negligence counts and the jury awarded damages. The jury found for defendant, American Drug Stores, Inc., on the Dramshop Act counts. On April 16, 1993, plaintiff moved for judgment notwithstanding the verdict (judgment *non obstante veredicto*, hereinafter judgment *n.o.v.*) or, in the alternative, a new trial. These motions were denied on June 17, 1993. Plaintiff perfected his appeal on July 16, 1993.

Plaintiff contends that the trial court erred by (1) denying plaintiff's motion for judgment *n.o.v.*, even though defendant American Drug Stores, Inc.'s liability on the dramshop count was so overwhelmingly proven by the evidence that no contrary verdict could stand; and (2) denying plaintiff's motion for a new trial, even though the jury's verdict in the dramshop defendant's favor was against the manifest weight of the evidence. We affirm.

Polinski testified that on November 22, 1991, he purchased a 12-pack of beer from defendant's Libertyville store located in the Red Top Plaza. Polinski testified that he was certain that he purchased the beer at defendant's Red Top Plaza store.

On the afternoon of November 23, 1991, at approximately 5 p.m., Polinski began butchering a deer he had killed. During this process Polinski began to drink beer. Polinski testified that between 5 p.m. and 8:30 p.m. he drank "three to four beers." Each beer was taken from the 12-pack purchased at defendant's store. Polinski asserted that on November 23, 1993, he did not consume any alcohol other than the beer sold to him by defendant.

At approximately 8:30 p.m. Polinski left home to travel to a nearby convenience store. Polinski entered his gray/silver truck. While driving away from his home on Clover Lane, Polinski noticed that it had begun to snow. Snow had accumulated on the grass and in patches on the streets. While his truck was equipped with on-demand four-wheel drive, Polinski did not engage this safety feature.

Polinski drove north towards Route 137. He testified that he did not have trouble braking at the intersection of Clover Lane and Route 137. Polinski stated that the roadway was covered with snow and patches of ice. He turned left onto Route 137 and began to head west. Polinski asserted that he maintained a speed of 30 to 35 miles per hour.

Polinski began to lose control of his truck after passing Oak Grove Avenue. The truck began to fishtail and slide. The truck swung around until it was facing south. While sliding sideways, the truck left the westbound lanes of traffic, crossed the median strip, and entered the eastbound lanes of Route 137. Polinski saw the flash of headlights. His truck collided with decedent's car. Polinski was uninjured. Decedent was killed on impact.

Several minutes earlier, at approximately 8 p.m., Sean Brennan (Sean) was driving east on Route 137. Sean was returning from a family outing. John Brennan, Jr. (John), Sean's father, was driving the car in front of Sean's van. Sean described the road conditions on Route 137 as "wet." Both Sean and John noticed salt trucks in the westbound and eastbound lanes of Route 137. The Brennan family arrived at John's home at approximately 8 p.m.

John and Sean left John's home and entered Sean's van at approximately 8:15 p.m. John testified that there were small patches of ice on the road. While approaching Route 137 from the south, Sean noticed a gray truck heading west and a blue car heading east on Route 137. As the car and the truck passed, Sean used the blue car's speed as a gauge to estimate the truck's speed; he set the speed of the truck at approximately 50 miles per hour. Sean testified that the speed limit on Route 137 is 45 miles per hour. Sean's van slid "slightly" when he pulled onto westbound Route 137. A salt truck had passed over this section of road 15 to 20 minutes earlier. While turning onto Route 137, the van was travelling approximately 5 to 10 miles per hour.

Upon entering westbound traffic, Sean noticed the accident. Sean testified that the truck involved in the accident was the truck he had just seen travelling west on Route 137. Sean and John exited the van and attempted to help. Sean physically approached and spoke to Polinski on two occasions. Sean first asked Polinski if he needed an ambulance; Polinski replied he did not. During their next discussion, Sean asked Polinski what happened; Polinski stated that he had lost control of his car. While at the accident scene, Sean heard the sound of locked brakes. An eastbound car was skidding towards the accident scene. The car slowed as it skidded, regained control, pulled around the accident scene, and proceeded on. Sean never observed Polinski stumble or sway, nor did Sean detect alcohol on Polinski's breath.

Upon exiting the van, John asked Polinski if he was all right. John testified that Polinski replied "I must have been going too fast." John asked Polinski to move his truck so that an ambulance could better reach decedent's car. Polinski tried to move his truck but it would not start. John testified that when Polinski exited his truck he stumbled.

On November 23, 1991, John Lucas (Lucas) was a highway patrolman with the Lake County sheriff's office. He arrived at the accident scene at approximately 8:56 p.m. Lucas testified that at approximately 8:50 p.m. on November 23, 1991, flurries had made Route 137 wet with some patches of snow. According to Lucas, Route 137 "was basically wet" when he arrived at the accident scene.

Photographs of the accident scene, however, show tire marks in the snow leading from the westbound lanes, across the median strip, and into the eastbound lanes of Route 137.

Lucas detected the odor of alcohol on Polinski's breath after first speaking with him. Lucas asked Polinski to have a seat in Lucas' squad car. Polinski complied. Over the next half-hour, Lucas periodically checked on Polinski. Each time, Lucas detected alcohol on Polinski's breath.

Approximately 30 minutes after Lucas' arrival, Deputy John Jansky (Jansky), an accident investigator and reconstructionist with the Lake County sheriff's office, arrived at the accident scene. Jansky testified that as he drove to the accident scene the pavement on Route 137 was "wet." On cross-examination, he admitted to testifying in an earlier related proceeding that the roads in Lake County had become "icy" on the night of November 23, 1991. That evening the temperature had fallen from 36 or 37 degrees, to approximately 32 degrees Fahrenheit. Jansky testified that the skid marks left by Polinski's truck revealed a smooth slide. There was no evidence that Polinski's vehicle was weaving. Neither was there evidence that Polinski had used jerking motions while steering his truck.

Jansky and Lucas interviewed Mary Bruckner (Bruckner) at the accident scene. Bruckner has resided with Polinski for the last three years. During this time, she has observed Polinski intoxicated. At trial, Bruckner testified that she saw Polinski drinking a beer while butchering a deer in the late afternoon or early evening of November 23, 1991. Bruckner left for the grocery store at approximately 8 p.m. Before leaving, she spent 5 or 10 minutes speaking with Polinski in the kitchen of the couple's home. Bruckner asserted that Polinski was not staggering, slurring his speech, or emitting a strong odor of alcohol. Bruckner testified that she "didn't notice anything with his eyes." Bruckner stated that she had not seen anything that would lead her to believe that Polinski was intoxicated.

Bruckner testified that the driving conditions on November 23, 1991, were less than ideal. According to Bruckner, both sleet and snow were falling when she left for the grocery store at approximately 8 p.m. She testified that it was "very windy, cold." Bruckner answered "yes" when asked if she had problems "negotiating" Route 137. She described Route 137 as being "slippery" with "blowing snow across the road." Bruckner testified that as she returned from the grocery store, Route 137 was "very sloppy." Bruckner came upon the accident scene, recognized Polinski's truck, and stopped.

Polinski was interviewed at the accident scene by Jansky and Lucas. The officers also administered three field sobriety tests. Both the

interview and sobriety tests were videotaped by Jansky and Lucas. Jansky started a videotape camera located in his squad car. The camera recorded the area in front of Jansky's squad car. Jansky stated that the camera is used to record interviews and sobriety tests performed in the field. Although Jansky was equipped with a wireless microphone, because of a malfunction the videotape does not include audio. This videotape was admitted into evidence without objection. We have reviewed the videotape as part of the record.

The interview took place in the area directly in front of Jansky's squad car. Jansky testified that Polinski stated that he lost control or hit a patch of ice. Jansky and Lucas noticed a strong odor of alcohol on Polinski's breath and that his eyes were bloodshot. Lucas testified that Polinski spoke with a "slurred, fixed-tongue speech pattern" and an "Eastern European" accent. On cross-examination, Lucas admitted to never having spoken to Polinski before November 23, 1991, or having knowledge of his normal speech patterns. Jansky and Lucas testified that Polinski once pointed the wrong way when identifying the location of his home.

Jansky and Lucas conducted the field sobriety tests. The first test required Polinski to recite the alphabet. The second test was the walk-and-turn test. The final field sobriety test required Polinski to stand on one leg for 30 seconds. According to Jansky and Lucas, Polinski failed all three of the field sobriety tests. On the basis of the interview and the results of the field sobriety tests, Jansky and Lucas felt that Polinski was intoxicated. Polinski's blood-alcohol level tested out at .19.

■ Plaintiff first contends that the trial court erred in denying plaintiff's motion for judgment *n.o.v.*, even though defendant's liability was so overwhelmingly proven by the evidence that no contrary verdict could stand. To recover against defendant under the Dramshop Act, plaintiff must prove, among other things, that Polinski's alleged intoxication was at least one cause of the accident. (Ill. Rev. Stat. 1991, ch. 43, par. 135 (now 235 ILCS 5/6—21 (West 1992)); see also Illinois Pattern Jury Instructions, Civil, No. 150.09 (3d ed. 1991).) Plaintiff's action fails if the causation element is not proven. Reversal of the trial court's denial of plaintiff's motion for judgment *n.o.v.*, therefore, requires a finding that the evidence, when viewed in the aspect most favorable to the defendant, so overwhelmingly established Polinski's intoxication as a cause of the accident that no contrary finding could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.

Plaintiff's causation argument is unpersuasive. Essentially, plaintiff asserts that because Polinski was intoxicated and his truck

crossed the center line on Route 137, intoxication must have been a cause of the accident. We disagree. That Polinski was intoxicated and an accident occurred while he was intoxicated are insufficient to establish intoxication as a cause of the accident. To hold otherwise would eliminate the causation requirement from the Dramshop Act. Causation would be presumed whenever a plaintiff proved that an accident occurred and the driver at fault was intoxicated. This is not the intent expressed in the Dramshop Act.

In *Reese v. Roth* (1978), 62 Ill. App. 3d 937, the plaintiff's decedent was killed when a car driven by Edward Bedal (Bedal) struck decedent's vehicle. Bedal was intoxicated. As in the present case, there were no witnesses to the accident. A Kane County deputy sheriff testified that the force of the collision moved the cars so that he could not determine the lane in which the impact occurred. Without knowing whether the accident occurred in the decedent's or Bedal's lane of traffic, we held the jury's determination that Bedal's intoxication caused the accident to be based on mere speculation. We reversed the trial court's denial of the defendant's motion for judgment *n.o.v.* In the present case, photographs and testimony were introduced establishing that Polinski's car crossed from the westbound lanes of Route 137 to the eastbound lanes. Unlike *Reese*, therefore, the evidence adduced at trial showed that the accident occurred in the decedent's lane of traffic.

Despite evidence showing that Polinski's truck and decedent's car collided in the eastbound lane of Route 137, the present case is not controlled by *Reese*. *Reese* stands for the proposition that when the location of the collision cannot be proven, a determination that an individual's intoxication caused an accident is based on speculation. It does not, however, follow that establishing the location of the collision is sufficient, with nothing more, to prove that an individual's intoxication was a cause of an accident. Plaintiffs must prove causation.

Sufficient evidence was adduced at trial to support a finding that Polinski's intoxication was not a cause of the accident. Several witnesses described the road conditions as less than ideal. Plaintiff's witness Jansky admitted that he had described road conditions on November 23, 1991, as "icy." Sean testified that Polinski was driving 50 miles per hour in a 45-mile-per-hour zone. When questioned by John, Polinski stated that he was driving too fast. Both Sean and Bruckner testified that they had some difficulty controlling their vehicles while on Route 137. Sean testified that an eastbound car almost skidded into the accident scene.

■ Whether Polinski's intoxication was a cause of the accident

was a question of fact for the jury. Conflicting evidence bearing on this question was offered. When testimony is in conflict, the factual determination is left to the jury. (*Maple v. Gustafson* (1992), 151 Ill. 2d 445, 452-53; *Taylor v. Village Commons Plaza, Inc.* (1987), 164 Ill. App. 3d 460, 463-64.) The jury's determination will not be set aside unless it is palpably erroneous. (*Taylor*, 164 Ill. App. 3d at 464.) It is improper to enter a judgment *n.o.v.* when there is evidence which, along with reasonable inferences drawn therefrom, demonstrates a substantial factual dispute, or where assessing the witnesses' credibility or deciding between conflicting evidence is decisive to the outcome. (*Maple*, 151 Ill. 2d at 454.) This is just such a case. Conflicting testimony concerning the road conditions, driving difficulty, and the speed at which Polinski was driving immediately before the accident was all before the jury. A court may not set aside a jury verdict merely because the court feels a contrary verdict would be more reasonable. (*Maple*, 151 Ill. 2d at 452.) We hold that the evidence, when viewed in the aspect most favorable to the defendant, does not so overwhelmingly establish that Polinski's alleged intoxication was a cause of the accident that a contrary finding could never stand.

Because the plaintiff failed to satisfy the *Pedrick* standard on the causation element, we decline to examine plaintiff's arguments concerning the remaining elements of a dramshop action.

■ Plaintiff next argues that the trial court erred by denying plaintiff's motion for a new trial, even though the jury's verdict in defendant's favor was against the manifest weight of the evidence. It is an abuse of discretion for a trial court to grant a motion for a new trial when there is sufficient evidence to support the jury's verdict. (*Maple*, 151 Ill. 2d at 465.) A verdict is against the manifest weight of the evidence when an opposite conclusion is apparent or the verdict is arbitrary and unsupported by evidence. (*Knight v. Haydary* (1992), 223 Ill. App. 3d 564, 573.) Citing *Pedrick*, plaintiff points out that he has a "significantly lesser burden to prove when moving for a new trial, than when moving for [judgment] *n.o.v.*" Even under this relaxed standard of review, the facts as presented above are sufficient to support the jury's verdict. The verdict was not against the manifest weight of the evidence.

For the foregoing reasons the judgment of the circuit court of Lake County is affirmed.

Affirmed.

QUETSCH and COLWELL, JJ., concur.