BURMAC METAL FINISHING COMPANY, Plaintiff-Appellant, v. WEST BEND MUTUAL INSURANCE COMPANY, Defendant-Appellee.

Second District   No. 2—04—0544

Opinion filed March 31, 2005.

Edward Eshoo, Jr., and Michael L. Childress, both of Childress Duffy Goldblatt, Ltd., of Chicago, for appellant.

John W. France and Ronald A. Barch, both of Cicero & France, P.C., of Rockford, for appellee.

JUSTICE BYRNE delivered the opinion of the court:

Plaintiff, Burmac Metal Finishing Co., brought a claim against defendant, West Bend Mutual Insurance Co., its commercial insurer, to cover the loss of its commercial property after a fire damaged the property. The jury found that plaintiff failed to substantially perform the condition of the insurance contract that required plaintiff to maintain its automatic sprinkler system and returned a general verdict in favor of defendant. Thereafter, the trial court entered judgment for defendant and awarded it costs in the amount of $3,632.

Plaintiff appeals the judgment, contending that the trial court erred in denying its motion for a judgment notwithstanding the verdict or, in the alternative, denying its motion for a new trial. Plaintiff further contends that the trial court abused its discretion in awarding costs to defendant. We affirm.

## BACKGROUND

Duane and Susan Dickson have been the owners and operators of plaintiff since 1981. Sometime around 1990, the Dicksons relocated plaintiff's operations to a building located at 2300 11th Street in Rockford, which it insured through defendant. Plaintiff sought coverage from defendant after a natural gas explosion and ensuing fire caused damage to the building on March 29, 1997. Defendant denied coverage, claiming plaintiff failed to satisfy a condition precedent under the insurance policy when plaintiff failed to properly maintain its automatic sprinkler system, which was required by the protective safeguards endorsement (PSE) to the policy. Plaintiff filed a complaint for declaratory judgment against defendant.

Deposition testimony revealed that plaintiff's employees were directed to plug at least three sprinkler heads that had been placed over an oven in plaintiff's building. Plaintiff was seeking to prevent the building's automatic sprinkler system from activating over the area containing the oven because of the high heat generated by the oven. Plaintiff did not inform defendant of the sprinkler removals. An independent insurance adjuster hired by defendant testified that he found 13 capped sprinklers, including one sprinkler that had been over the oven. His investigation revealed that the fire had originated in the area of the oven.

The trial court granted defendant's motion for summary judgment, finding that plaintiff did not comply with the conditions of the policy and therefore was not entitled to coverage. Thereafter, plaintiff appealed. *Burmac Metal Finishing Co. v. West Bend Mutual Insurance Co.*, No. 2—00—1390 (2002) (unpublished order under Supreme Court Rule 23).

On appeal, we found that the policy clearly required plaintiff to maintain a sprinkler system in its 11th Street building as a condition precedent to insurance coverage. However, we held that the question of whether plaintiff substantially complied with the condition precedent of maintaining the sprinkler system was a question of fact that should have precluded the granting of summary judgment. The record revealed that plaintiff removed and plugged only 3 to 13 sprinklers out of over 600 and that, although the fire may have originated in the area of the plugged sprinklers, the disabled sprinklers

may not have caused or contributed to the fire. This presented a question of fact as to plaintiff's compliance, and accordingly, we held that summary judgment was improper. Thus, the cause continued on remand to a jury trial on the sole question of whether plaintiff substantially complied with the condition precedent of maintaining the sprinkler system in question.

## THE JURY TRIAL ON REMAND

At the jury trial on remand, Duane testified that the building was equipped with an automatic sprinkler system consisting of approximately 600 sprinkler heads. The system consisted of four major sections and the water flow to each section was controlled by a separate "post-indicator valve" or PIV. If a PIV is in the closed position, there is no water flow to the portion of the sprinkler system controlled by the closed PIV. However, a closed PIV can be overridden if necessary to fight a fire. The configuration of plaintiff's automatic sprinkler system remained unchanged from 1990 through the time of the fire.

Duane testified that during the summer of 1996, plaintiff remodeled the southwest portion of its facility to incorporate a new coating line, the Atwood Line, which included a washer, a dryer, a coating section, and a high-heat oven that operated at 375 degrees Fahrenheit. When the Atwood Line finally went into production, sprinkler heads in the area immediately in front of the high-heat oven began discharging water. Plaintiff tried to correct the problem with new sprinkler heads, but was unsuccessful. In order to avoid further disruption in production, Duane directed an employee named Brad Sassman to remove and replace several sprinkler heads with metal plugs or caps. Duane acknowledged that three sprinkler heads were removed and replaced with plugs.

Prior to his death, Edward Archer gave a discovery deposition. Portions of the deposition were read into evidence during the trial. At the time of the fire, Archer was district chief of the Rockford fire department and was the first member to arrive at the scene of the 11th Street fire on March 29, 1997. He testified that, upon his arrival, the southwest portion of the building was in flames. He also inspected the building several days after the fire and observed between 9 and 19 capped sprinkler heads.

Darrell Roum and Brad Sassman also testified concerning the capped sprinkler heads. Roum stated that, during his inspection of plaintiff's site, he discovered 19 capped sprinkler heads, all of which were adjacent to the high-heat oven located in the southwest portion of the building. He prepared a diagram depicting the location of the

capped sprinkler heads, which was introduced into evidence. Roum also testified that he had a conversation with Duane, Arthur Pestcoe, and Bruce Frazier, representatives of the public adjuster plaintiff hired to represent it in connection with the loss. Roum related that Pestcoe stated in Duane's presence that no water flowed through the portion of the sprinkler system that serviced the location of the March 29 fire because the PIV was shut off.

Sassman testified that he was directed by Duane in the summer of 1996 to cap sprinkler heads in the area immediately adjacent to the high-heat oven. Sassman explained to the jury that he removed two sprinkler heads and replaced them with metal plugs. Shortly after he capped the first two heads, "a couple more heads went off," and Duane sent him to the hardware store to purchase more metal plugs. He purchased 20 to 39 more plugs, but he refused Duane's directive to remove and replace more sprinkler heads. Sassman testified that he did not know whether any more heads were capped and did not know what happened to the additional plugs that he purchased.

Plaintiff employed Per Mar Security to maintain the automatic sprinkler system, although Per Mar denies that it did anything other than inspect and test plaintiff's system. It is undisputed, however, that Per Mar inspected and tested the sprinkler system on a monthly basis and that after each visit a representative would generate a report listing the results of the inspection. Susan admitted at trial that from time to time she received and signed the monthly inspection reports. Susan testified that on March 3, 1997, she signed a Per Mar inspection report that specifically indicated that the PIV that controlled the water supply to the portion of the sprinkler system that serviced the location of the Atwood Line was in the closed position. Susan testified that she did not inform defendant that any sprinkler heads had been removed and capped during 1996. In fact, she did not even know about the capping until Duane told her after the fire occurred.

William Moran, who worked for Per Mar during the months leading up to the fire and who inspected and tested the sprinkler system for water flow on March 3, determined that the PIV that controlled the water flow through the portion of the sprinkler system that protected the location of the Atwood Line was in the closed position, and he had Susan sign the report so indicating. Moran testified that the PIV that controlled the water to the portion of the sprinkler system that serviced the Atwood Line was in the closed position each time he checked it between June 1996 and March 1997.

Ann Kempka, a former underwriter employed by defendant, testified that plaintiff's automatic sprinkler system met underwriting guidelines when she renewed plaintiff's policy in December 1996.

Kempka did not learn about the capping until after the fire. According to Timothy Wiedmeyer, who was then defendant's property claims specialist, to the best of his knowledge, plaintiff did not make defendant aware of the fact that sprinkler heads had been removed and capped prior to the fire.

Dennis Dyl, a professional engineer who was certified and specially trained in the concepts, principles of cause, and origin of fires, testified on behalf of defendant. He investigated the 11th Street fire and opined that the damages caused to the building resulted from a fire that originated in the area of the pilot to the main burner of the large high-heat oven in the southwest corner of the building. In his opinion, an aluminum pilot line that plaintiff used to connect the oven burner pilot to a nearby natural gas supply failed and the failure of the pilot line resulted in a gas leak that was, in turn, ignited by the adjacent oven burner. He believed that the fire began below the automatic sprinkler system and was not preceded by an explosion.

Following closing argument, the jury returned a general verdict in favor of defendant and in addition answered two special interrogatories finding that (1) three or more capped sprinklers existed at the time of the loss, and (2) the existence of three or more capped sprinkler heads at the time of the loss constituted a failure to substantially perform the condition of insurance that required plaintiff to maintain its automatic sprinkler system.

Plaintiff filed a posttrial motion for judgment notwithstanding the verdict or for a new trial, which was subsequently denied. Following the denial of its posttrial motion, defendant filed a motion for a bill of costs. Thereafter, the trial court granted defendant costs in the amount of $3,632. Plaintiff timely appeals.

## MOTION TO STRIKE

■ Before we begin our analysis, we must address defendant's motion to strike plaintiff's brief for its failure to comply with Supreme Court Rule 341(e)(6) (188 Ill. 2d R. 341(e)(6)). Defendant points out that plaintiff's two-page statement of facts refers to our earlier Rule 23 order for "the relevant facts necessary for a general understanding of this appeal" and further directs that the balance of "relevant facts necessary for an understanding of the issues raised will be addressed in the Argument section of the Brief." Defendant asserts that the problem with plaintiff's fact section is twofold: first, the factual summary in the previous Rule 23 order is not a record of the trial testimony and evidence that the jury considered to reach the verdict and judgment currently on appeal; and second, plaintiff's reference to the record at various points in the argument section of the brief is not

the equivalent of stating those facts that are necessary to an understanding of the case, stated fairly and without argument as required by Rule 341(e)(6).

After reviewing plaintiff's brief, we agree with defendant that plaintiff's statement of facts is woefully lacking for the reasons defendant sets forth. Failure to comply with the rules regarding appeal briefs is not an inconsequential matter. *Collier v. Avis Rent A Car System, Inc.*, 248 Ill. App. 3d 1088, 1095 (1993). An appellate court has the right to strike an appellant's brief and dismiss the appeal as a result of the appellant's failure to provide a complete statement of facts. *Alderson v. Southern Co.*, 321 Ill. App. 3d 832, 845 (2001). A party's failure to comply with Rule 341 is grounds for disregarding its arguments on appeal. *Jeffrey M. Goldberg & Associates, Ltd. v. Collins Tuttle & Co.*, 264 Ill. App. 3d 878, 886 (1994). This is especially troubling here because we previously warned counsel in the Rule 23 order to heed Rule 341. Accordingly, we express our displeasure with plaintiff's counsel and admonish Edward Eshoo, Jr., and Michael L. Childress for failing to comply with Rule 341. Despite their lack of professionalism, however, because defendant has provided a summary of the relevant evidence in its response brief and the issues are simple, we will not penalize plaintiff severely for the lapses of its counsel. We therefore deny defendant's motion to strike plaintiff's brief on appeal.

## ANALYSIS

Plaintiff argues on appeal that the trial court erred by: (1) denying its motion for a judgment notwithstanding the verdict (judgment *n.o.v.*); and (2) denying its motion for a new trial because the court: (A) allowed defendant's expert, Dennis Dyl, to testify about the cause and origin of the fire; (B) allowed evidence regarding plaintiff's alleged violation of the PSE by removing and replacing sprinklers with metal plugs; (C) refused its tendered jury instruction; (D) allowed defendant's jury instruction; and (E) allowed the special interrogatories. Plaintiff also argues that the trial court abused its discretion in awarding costs to defendant.

### 1. Judgment Notwithstanding the Verdict

A judgment *n.o.v.* can be entered only if all of the evidence, viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967); *A.D. v. Forest Preserve District*, 313 Ill. App. 3d 919, 922 (2000). We review *de novo* the trial court's decision to grant or deny a motion for judgment *n.o.v. Jones v. Chicago Osteopathic Hospital*, 316 Ill. App. 3d 1121, 1125 (2000).

■ In support of its first contention, plaintiff claims that it

removed and capped the sprinkler heads prior to the effective date of the December 1996 policy of renewal in force on the date of the March 1997 fire. Because the removal and capping occurred prior to the date of renewal, plaintiff surmises that it did not alter, modify, or change the sprinkler system in any way *after* the effective date of the renewal policy. Because plaintiff did not alter, modify, or change the sprinkler system in any way after the effective date of the renewal policy, plaintiff contends that the question of whether it "substantially complied" with the terms and conditions of the PSE should have been decided in its favor as a matter of law.

We agree with defendant that, because the jury may not have believed that *all* of the capping in question occurred prior to the effective date of the December 1996 policy of renewal, the trial court correctly denied plaintiff's motion for judgment *n.o.v.* Duane Dickson admitted to the jury that three sprinkler heads were capped in either June or July 1996. Apart from Dickson's testimony, the jury also heard from others concerning the number of sprinkler heads that were capped prior to the fire. Brad Sassman testified that he capped two sprinkler heads before his departure from plaintiff in July 1996. Sassman testified that he refused Dickson's order to cap more sprinkler heads and that, at Dickson's direction, he purchased 20 to 30 additional metal plugs. Darrell Roum testified that he located 19 capped sprinkler heads. Chief Archer testified that he observed between 9 and 19 capped sprinkler heads. Given the variance between the 3 sprinkler heads Dickson admits were capped in June or July 1996 and the 9 to 19 capped sprinkler heads detected by Roum and Chief Archer, the jury could have reasonably concluded that some if not all of the additional 16 sprinkler heads were capped after the effective date that defendant's policy was in force. Viewing the evidence in a light most favorable to defendant, we must assume the jury concluded that on the date of the loss there were 19 capped sprinkler heads, not 3, and that some of the sprinkler heads were capped after the effective date of defendant's renewal policy in force on the date of the fire.

Even if we were to accept plaintiff's position on capping, plaintiff's argument is nothing more than a recharacterization of its earlier argument in the prior appeal that plaintiff's renewal of the policy somehow imputed defendant with the knowledge that the sprinkler heads were disabled or that defendant accepted the risk. However, we rejected plaintiff's waiver and estoppel argument in our Rule 23 order when we found that the knowledge that the sprinkler heads were disabled could not be imputed to defendant because there was no evidence whatsoever that defendant knew or should have known that any of the heads had been capped. Indeed, plaintiff does not allege

that it ever told defendant about the capping, and we still find no evidence that defendant otherwise knew or should have known that the sprinkler heads had been disabled before the policy was renewed.

As a matter of law, a renewal of a policy is, in effect, a new contract of assurance and, unless otherwise expressed, on the same terms and conditions as were contained in the original policy. *Dungey v. Haines & Britton, Ltd.*, 155 Ill. 2d 329, 334 (1993); *Economy Fire & Casualty Co. v. Pearce*, 79 Ill. App. 3d 559, 563 (1979); *Rivota v. Kaplan*, 49 Ill. App. 3d 910, 918 (1977). Unless provided otherwise, it is the general rule that when a policy renewal is made, the terms and conditions of the original policy become part of the renewal contract of insurance. *Dungey*, 155 Ill. 2d at 334.

Since at least 1990, plaintiff's building was insured under defendant's policy, which included a PSE in one form or another. Since 1992, defendant's renewal policies included a PSE that required plaintiff to maintain its automatic sprinkler system as a condition to coverage. Thus, as a matter of law, the same terms and conditions contained in the December 1992, December 1993, December 1994, and December 1995 renewal policies also were part of the December 1996 renewal policy. Therefore, the evidence regarding the composition of plaintiff's automatic sprinkler system before the December 1996 renewal, as well as the evidence concerning the efforts to "maintain" the sprinkler system prior to the December 1996 renewal, was and is highly germane and material to the question of whether plaintiff was in substantial compliance with the PSE at the time of the March 1997 fire. By operation of law, defendant was entitled to assume that the automatic sprinkler system in place and being maintained at the time of the December renewals from 1992 through 1995 was being maintained between the December 1996 renewal and the date of loss. As the jury determined, however, based upon the trial testimony of Duane Dickson, Brad Sassman, Darrell Roum, Chief Archer, and William Moran, the automatic sprinkler system that existed in December 1995 was not the same automatic sprinkler system that existed on the date of loss.

Moreover, it is unquestioned that parties to an insurance contract should act in good faith. Plaintiff was not a lay person, unknowledgeable in the field of insurance. Plaintiff was familiar with the terms of the previous insurance policies and knew that an alteration to the sprinkler system might affect the acceptance or continuation of the risk. We find it patently ridiculous to assume defendant would have renewed the policy without modifying the terms if it had known about the capping or if it at least had had a chance to determine whether the insured met its underwriting guidelines. Accordingly, we find that the trial court properly denied the motion for judgment *n.o.v.*

## 2. New Trial

On review, the denial of a motion seeking a new trial will be disturbed only if it was an abuse of discretion; the applicable standard of review asks whether the jury's verdict was against the manifest weight of the evidence. *Kritzen v. Flender Corp.*, 226 Ill. App. 3d 541, 547 (1992).

### A. Expert Testimony

■ Plaintiff next contends that the trial court erred in denying its motion for a new trial based on the failure to bar defendant's expert, Dennis Dyl, from testifying as a cause and origin expert. Relying on section 15(a) of the Private Detective, Private Alarm, Private Security, and Locksmith Act of 1993 (the Private Detective Act) (225 ILCS 446/15(a) (West 2002)), plaintiff contends that Dyl's testimony should have been barred because he was not licensed by the state as either a professional engineer or a private detective at the time he started and conducted his investigation into the cause and origin of the fire.

Under the Private Detective Act, anyone who investigates the causes and origins of fires must be licensed under the statute. 225 ILCS 446/15(a) (West 2002). In *People v. West*, 264 Ill. App. 3d 176, 184 (1994), the court held that the Private Detective Act barred an unlicensed person from testifying as an expert as to the cause and origin of a fire because his investigation was conducted in contravention of the statute and, thus, the trial court erred in allowing his testimony at trial. Plaintiff contends that *West* required the trial court to bar Dyl from testifying at trial because Dyl lacked a proper license at the time of the investigation and investigated the cause and origin of the fire in contravention of the statute. We find that the Private Detective Act does not apply in this case.

The licensing requirement of the Private Detective Act contains an exception for persons licensed by the state to practice professional engineering. 225 ILCS 446/30(a)(1)(M) (West 2002). The Professional Engineering Practice Act of 1989 defines a "professional engineer" as a person licensed under the laws of the State of Illinois to practice "professional engineering." 225 ILCS 325/4(m) (West 2002). Although he was licensed as a professional engineer in Wisconsin at the time of the investigation and he was licensed in Illinois at the time of trial, Dyl was not licensed in Illinois at the time of the investigation. The Professional Engineering Practice Act, however, does not prevent employees of professional engineers lawfully practicing as sole owners, partnerships, or corporations from acting under the direct supervision of their employers. 225 ILCS 325/3(b)(1) (West 2002). We note that there have been several modifications of the Private Detective Act

over the years, but the professional engineering exemption is common to every version of the statute.

Plaintiff contends that Dyl was not employed by and working under the direct supervision of a licensed professional engineer at the time of his investigation and therefore his testimony should not have been allowed. Dyl's prelicensing cause-and-origin activities were in compliance with the Private Detective Act because his work was done under the direct supervision of a licensed Illinois professional engineer, Dr. Kent Johnson. The Professional Engineering Practice Act defines "direct supervision" as "work prepared under the control of a licensed professional engineer or that work as to which that professional engineer has detailed professional knowledge." 225 ILCS 325/4(f) (West 2002). The deposition testimony revealed that Dyl and Johnson were employed by Bodycote Taussig, Inc., and that Johnson had detailed professional knowledge about Dyl's activities. Based on the evidence presented, the trial court concluded that Dyl's work was prepared under the control of a licensed professional engineer or was work as to which that professional engineer had detailed knowledge. We cannot say that the trial court abused its discretion.

The decision whether to admit expert testimony is a matter within the sound discretion of the trial court, and such a ruling will not be reversed absent an abuse of discretion. *Thompson v. Gordon,* 349 Ill. App. 3d 923, 929 (2004). Expert testimony is admissible if the proffered expert is qualified by knowledge, skill, experience, training, or education, and the testimony will assist the trier of fact in understanding the evidence. *Thompson,* 349 Ill. App. 3d at 929. We find that based on Dyl's knowledge, skill, experience, training, and education, the trial court's decision to admit his testimony was a proper exercise of discretion.

### B. Admission of Evidence of Capping the Sprinkler Heads

■ In a variation of its first contention, plaintiff next argues that the trial court erred in allowing evidence regarding plaintiff's alleged violation of the PSE by removing and replacing 3 to 19 sprinkler heads, because the removal and replacement occurred prior to the effective date of the December 1996 policy period.

As we stated above, the problem with plaintiff's argument is that the jury may not have believed that all of the capping in question occurred prior to the effective date of the December 1996 renewal. Duane admitted to capping three sprinkler heads in either June or July 1996. However, Roum and Chief Archer detected 9 to 19 capped sprinkler heads. Thus, because of the variances in this testimony, the jury could have reasonably concluded that some if not all of the

sprinkler heads were capped after the effective date of the policy. Consequently, we see no reason to disturb the court's denial of plaintiff's motion for a new trial based on this argument.

## C. Jury Instructions

■ Plaintiff next contends that the trial court erred in failing to grant it a new trial because it suffered prejudicial error as a result of the court's allowing or denying certain jury instructions and special interrogatories. Litigants have the right to have submitted to the jury instructions that inform the jury of the issues presented, the legal principles to be applied, and the facts that must be proved to support a verdict. *Friedman v. Park District of Highland Park*, 151 Ill. App. 3d 374, 388 (1986). Illinois Pattern Jury Instructions (hereinafter IPI) must be used unless the trial court first determines that an IPI instruction does not contain an accurate statement of the law. 177 Ill. 2d R. 239. It is only when the IPI does not contain a proper instruction on a subject that a non-IPI instruction may be given. *Taylor v. Village Commons Plaza, Inc.*, 164 Ill. App. 3d 460, 465 (1987). The proper test for determining whether the jury was properly instructed is whether, taken as a whole, the instructions were clear enough so as not to mislead and whether they fairly and accurately stated the applicable law. *Howat v. Donelson*, 305 Ill. App. 3d 183, 186 (1999). "A trial court's determination as to the instructions to be given to the jury will not be disturbed absent an abuse of discretion." *Howat*, 305 Ill. App. 3d at 186.

Plaintiff first contends under this argument that the trial court abused its discretion when it refused to give its instruction No. 15, which provides:

> "To prevail on its breach of contract claim, Burmac must prove that it complied with the condition of maintaining the sprinkler system. However, Burmac need not prove that it strictly complied with the condition. Rather, Burmac need only show [it] substantially performed the condition to be entitled to coverage under the insurance policy. Burmac should not be denied coverage and thereby forced to forfeit all of the premiums that it had paid to West Bend based on a technical or nonmaterial defect in performance."

Based on our Rule 23 order, the question of "substantial compliance" with the condition precedent to coverage was the central issue of contention at trial. In response, both parties proposed instructions concerning plaintiff's obligation with respect to the condition precedent of coverage. Regarding the issue of "substantial compliance," plaintiff submitted its proposed instructions Nos. 13 through 18. Defendant submitted its proposed instructions Nos. 4 through 6

and No. 11. None of the original "substantial compliance" instructions offered by either party were accepted and issued by the trial court. The instructions were either rejected or withdrawn during the instruction conference. The trial court denied plaintiff's instruction No. 15 on the basis that it was too argumentative.

After considering argument of counsel, the Illinois Pattern Jury Instructions, Civil, No. 700.12 (hereafter IPI Civil (2000)) on "substantial performance," and case authority on the issue of "substantial compliance," the trial court ultimately gave two instructions on the issue: defendant's instruction No. 5, as modified, and plaintiff's instruction No. 16. During the conference, plaintiff's counsel expressed approval of the trial court's rulings and its combination of the instructions. A party waives any objection to a jury instruction by failing to object to it at the instruction conference. *Lawler v. MacDuff*, 335 Ill. App. 3d 144, 149 (2002). Accordingly, by agreeing with the trial court's decision to give instruction No. 16, plaintiff has waived the argument that the trial court erred in failing to give plaintiff's instruction No. 15.

Even without waiver, we agree with the trial court that plaintiff's instruction No. 15 is argumentative and that the instruction the trial court gave on the issues of "substantial performance" and plaintiff's duty to "substantially comply" with the "condition of coverage under the policy of Insurance" was sufficiently clear so as not to mislead the jury. Here, plaintiff's instruction No. 16 was based on IPI Civil (2000) No. 700.12, and defendant's instruction No. 5, unlike plaintiff's instruction No. 15, defined plaintiff's compliance obligations in a manner more consistent with the Rule 23 order, but without undue repetition or emphasis.

Plaintiff next contends that the trial court abused its discretion when it gave defendant's instruction No. 3, as modified. The instruction sets forth the definition of a contract, as defined in IPI Civil (2000) No. 700.01, describes the terms of the contract of insurance, including that defendant will pay for direct physical loss or damage to property, contains a condition that plaintiff must maintain the protective devices or services of the PSE, and sets forth the definition of the automatic sprinkler system. However, plaintiff also waived this argument because it agreed at the instruction conference to allow this instruction. We find no abuse of discretion.

Plaintiff next contends that special interrogatories Nos. 1 and 2 were improperly given. We disagree.

"The purpose of a special interrogatory is not to instruct the jury, but to act as a check on its verdict." *Fakhoury v. Vapor Corp.*, 218 Ill. App. 3d 20, 27 (1991). Specifically, special interrogatories are used to

test the general verdict against the jury's conclusions as to the ultimate controlling facts. A special interrogatory should be single and direct, should not confuse, mislead, or prejudice a jury, and should use the same language or terms as the instructions. *Fakhoury*, 218 Ill. App. 3d at 27. It is not error to give a special interrogatory that is consistent with the instructions that were properly given and that places no greater burden on the plaintiff than the instructions. *Fakhoury*, 218 Ill. App. 3d at 27.

Here, the special interrogatories specifically tested the jury's response to the sole question for which we remanded the cause: whether plaintiff substantially performed the condition precedent of maintaining the sprinkler system. The jury first responded yes to the question asking whether three or more capped sprinkler heads existed at the time of loss and yes to the question whether the existence of three or more capped sprinkler heads constituted a failure to substantially comply with the condition precedent to coverage. We do not find that the interrogatories confused or misled the jury or placed any undue burden on plaintiff. A negative answer to either of these interrogatories would have undermined the jury's general verdict. Accordingly, we hold that the trial court properly denied plaintiff's motion for a new trial.

### 3. Award of Costs

■ Plaintiff finally contends that the trial court erred in awarding costs to defendant. The trial court granted defendant filing fees of $98, subpoena and witness fees of $433, and $3,101, which was one-half of the total of all the court reporter fees charged to both parties, finding in its discretion that said fees were a necessity to trial. Plaintiff argues that (1) $289 of the subpoena and witness fees were associated with the trial setting that was mooted by the trial court's earlier grant of summary judgment that should not have been awarded, and (2) one-half of the court reporter fees associated with the November 2003 jury trial was a litigation expense not covered by statute or law and, therefore, because it was not an expense commonly understood to be "court costs," should not have been awarded as a matter of law.

A prevailing party may receive costs only where a statute or supreme court rule so provides. *Irwin v. McMillan*, 322 Ill. App. 3d 861, 864 (2001). "Costs are allowances in the nature of incidental damages awarded by law to reimburse the prevailing party, to some extent at least, for the expenses necessarily incurred in the assertion of his rights in court." *Galowich v. Beech Aircraft Corp.*, 92 Ill. 2d 157, 165-66 (1982). The taxing of allowable costs is an area in which the trial court exercises its discretion, to which we will defer unless that discretion is abused. *Myers v. Bash*, 334 Ill. App. 3d 369, 371 (2002).

Section 5—109 of the Illinois Code of Civil Procedure provides that a prevailing defendant may recover certain costs. 735 ILCS 5/5—109 (West 2002). The term "costs" is not defined in section 5—109 or any of the previous versions of the statute. However, in the recent decision of *Vicencio v. Lincoln-Way Builders, Inc.*, 204 Ill. 2d 295 (2003), the supreme court held that it is undisputed that section 5—108, which applies to prevailing plaintiffs, mandates that the costs taxed to the losing party are commonly understood to be "court costs," such as filing fees, subpoena fees, and statutory witness fees. *Vicencio*, 204 Ill. 2d at 302. The same conclusion clearly applies to section 5—109. Accordingly, we find that the trial court did not abuse its discretion in awarding defendant subpoena and witness fees from the trial.

We must resolve whether the trial court erred in taxing plaintiff $289 of the subpoena and witness fees that allegedly were mooted by the trial court's earlier grant of summary judgment. However, we cannot make a reasoned decision because plaintiff (1) failed to differentiate between the subpoena and witness fees that were issued before and after the trial court granted summary judgment and (2) failed to provide us with the transcript of the proceedings or a bystander's report of the hearing on defendant's motion for costs. Furthermore, the trial court stated that the fees were a necessity to the trial and, without a transcript of the hearing, under the principles of *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984), we must resolve against plaintiff any uncertainty arising from the incompleteness of the record.

The question of whether the taxing of court reporter fees and expenses incurred under circumstances similar to the present case has never been addressed by a court or statute in Illinois. We note that defendant asserts that plaintiff's counsel arranged for the court reporter and points out that plaintiff benefitted throughout the trial with "same-time" court reporting through a direct computer link and also benefitted from daily draft transcripts, and subsequently refused to pay. Plaintiff does not refute defendant's assertions; it merely points out that there is no statutory or case law authority for taxing the costs of a court reporter against the losing party and argues that therefore defendant should not be entitled to recover defendant's portion of the total fees. In ruling on defendant's bill of costs, the trial court determined, in its discretion, that under the circumstances, the court reporter fees and expenses constituted a "necessary" expense of litigation, in that the transcriptions were essential to the trial and further provided a record of the trial. Given that plaintiff does not refute that it benefitted from the court reporter, which it arranged for, and that the trial court awarded defendant its portion of the reporter's costs, we see no abuse of discretion.

For the foregoing reasons, we affirm the order of the circuit court of Winnebago County.

Affirmed.

McLAREN and HUTCHINSON, JJ., concur.